# WHEELING.

SPENCER AND MILLER v. LEE et als.

Submitted June 16, 1881.    Decided December 17, 1881.

1. In a suit to set aside a sale of land under a deed of trust, where the grantor is dead, his personal representative and heirs at law are necessary parties.

2. Where the *cestui que trust* is dead, his personal representative is a necessary party in such case.

3. A court of equity will in no case set aside a sale made by a trustee, simply because it was made after the death of the grantor.

4. If a trustee offers to sell the land after the death of the grantor, a court of equity will enjoin him or decline to do so according to the circumstances of each case. Among the circumstances, which should influence the courts in deciding an application for an injunction in such a case, are the length of time, which has elapsed since the grantor's death, and the amount of the personal estate, which came into the hands of his personal representative applicable to the payment of his debts.

5. A. P. A. buys a tract of land from G.; I. N. A advances the money to A. P. A., who pays for the land and takes a deed; afterwards to secure the money advanced A. P. A. executes a deed of trust upon the land and dies. HELD:
   A. P. A.'s widow is entitled to dower in the land.

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Wood, rendered respectively on the 6th day of April, 1880, and on the 7th day of April, 1880, in a cause in said court then pending, wherein Warrick B. Spencer and Lewis M. Miller were plaintiffs, and Sarah D. Lee and others were defendants, allowed upon the petition of the said Lee.

Hon. James M. Jackson, Judge of the fifth judicial circuit, rendered the decrees appealed from.

PATTON, JUDGE, furnishes the following statement of the case :

On the 11th day of October, 1858, A. P. Ankrum executed a deed of trust to John Ankrum, trustee, to secure the payment to James N. Ankrum of the sum of $300.00 due on the 15th day of April, 1858, and payable in two years from the date of the deed with interest. Said deed conveyed to said trustee a tract of land situate in Jackson county of this State, supposed to contain three hundred and eleven acres. The deed provided " in case the said debt with the interest thereon is not paid to the party of the second part at the time herein mentioned, then it is understood and hereby covenanted between the said creditor, debtor and trustee, that the said property is to be sold upon the terms and in the manner prescribed by the 6th section of chapter 118 of the Code of Virginia." At the time of the execution of this deed A. P. Ankrum was a married man; but his wife did not unite in the deed. Subsequently, to-wit, on the 23d day of April, 1860, one hundred acres of this land was sold by A. P. Ankrum to one Cyrus Rollins, and a deed was duly executed to him by Ankrum, which was signed also by his wife, Sarah D. It was regularly acknowledged by Ankrum, but the acknowledgment of Sarah D. omitted the words " declared she had willingly executed the same." Rollins on the 30th day of March, 1861, conveyed this land to W. B. Spencer.

In a chancery suit in the style of *Richard Ankrum* v. *A. P. Ankrum* in the circuit court of Jackson county fifty acres of that portion of the tract unsold by Ankrum was sold at public auction on the 23d of August, 1863, to satisfy a debt and was purchased by L. M. Miller, to whom a deed was executed by a commissioner of the court on the 3d day of September, 1864. Miller subsequently sold this tract to Fountain Woodward. A. P. Ankrum died September 11, 1863. After his death, at what time exactly does not appear, his widow Sarah D. Ankrum instituted a suit in the circuit court of Jackson county against John Ankrum, the trustee, *and others* (what others that portion of the record exhibited in this suit

fails to show) for the purpose of having her dower in the whole of the tract conveyed in the trust-deed aforesaid assigned to her. Such proceedings were had in that cause, that the report of commissioners, who were appointed to lay off and assign to her dower in that land, showing the assignment of seventy-three acres of the land was confirmed by a decree of the court pronounced on the 3d day of March, 1865. It appeared in those proceedings by actual survey, that the land contained only two hundred and nineteen acres. It is not pretended, that Spencer, Miller, Rollins, Woodward, or James N. Ankrum or his personal representative were parties to that suit.

On the 2d Tuesday in September, 1864, the trustee sold all the land conveyed to him as such trustee by the deed of the 11th of October, 1858, to said L. M. Miller at public auction. Long previous to this sale and prior to the 10th of May, 1859, James N. Ankrum departed this life having first made and published his last will and testament, which was duly admitted to probate on the 10th day of May, 1859; and John D. Ankrum, the same person who was trustee, qualified as sole executor thereof.

At July rules, 1865, W. B. Spencer filed his bill in the circuit court of Jackson county against L. M. Miller, Fountain Woodward, John Ankrum, Sarah D. Ankrum, Harriette E. Ankrum, Margarette J. Ankrum and Mary V. Ankrum the last three of whom were minor children of A. P. Ankrum, deceased. This bill alleges the execution of said deed of trust, the death of James Ankrum, the qualification of John Ankrum as executor, the sale of the hundred acres to Rollins and the conveyance of Rollins to him, the sale and conveyance of the fifty acres to Miller, the conveyance of the same by Miller to Woodward, the death of A. P. Ankrum intestate leaving his widow and the infant heirs above mentioned, the assignment of dower under the proceedings aforesaid to the widow, and that such assignment was excessive including all the improved land within the hundred acres purchased by him. The bill avers, that "said dower was unreasonable, unjust and illegal, and that such recovery was obtained either by collusion between said Sarah D. Ankrum and said trustee or through gross negligence of the latter, who was then the only

person legally competent to protect the interest of the creditors and distributees of the estates of the two decedents."

The bill also alleges the sale to Miller by the trustee for $625.00; that he does not know what the trustee did with the proceeds of sale; that he is entitled, if that sale stands, to a portion of those proceeds; that if he had known of said sale, he would have sustained no loss, for he would have purchased the land itself, which would have been ample to indemnify him, or he would have made the land bring sufficient to discharge all claims; that it was worth from $2,500.00 to $3,000.00; that the land was advertised for sale at no place except the court-house and there for only twelve days before the sale was made; that at the time the trustee advertised the land for sale, the complainant lived within twenty miles of the land, and his tenant, William Donahue, lived on the one hundred acres, and they were living at the same place on the day of sale; that the trustee well knew his residence and the tenant's and knew, that Donahue was his tenant; that neither he nor his tenant knew anything of the sale; that few persons knew of the sale and few were present; that L. M. Miller had full notice of all of the irregularities and illegality involved in the conduct of the trustee and in the execution of the trust and the facts stated. The bill exhibits the various deeds and conveyances, decrees, &c., referred to, and concludes:

" Your orator avers, that said trustee openly and illegally executed and abused his trust in the following particulars: 1. He did not give sufficient notice of the time and place of sale. 2. He sold the land subject to unjust and illegal dower. 3. By the death of Alexander P. Ankrum his power of sale was revoked, and the sale made afterwards was illegal. 4. By the appointment and acceptance of the executorship aforesaid said deed of trust was converted into a mortgage, and the sale made after those events was illegal. 5. Said trustee needlessly and recklessly sacrificed the trust-property."

The prayer of the bill is, that the trust-sale be set aside and annulled, and if need be, that the dower of the widow be reassigned, and that such other relief be granted in the premises, as he may be entitled to upon a final hearing of the cause.

John D. Ankrum answered the bill. In his answer he ad-

mits the execution of the trust-deed and states, that A. P. Ankrum had purchased the tract of land described in that deed from one Gibson; that James N. Ankrum assisted him in paying for it, and the deed of trust was given to secure James N. Ankrum. "So that virtually said trust-debt was purchase-money due by A. P. Ankrum on the lands to secure this purchase-money to Gibson, to wit, the sum of $300.00 due by note on said A. P. Ankrum, and in which note said J. N. Ankrum was security with its interest and to indemnify said security said trust-deed exhibit A was given. Both J. N. Ankrum and A. P. Ankrum died leaving said note wholly unpaid, and said Gibson proceeded against the estate of said J. N. Ankrum for the said debt; and in that state of the case being thereto requested respondent advertised said land for sale according to the 6th section of chapter 117 of the Code of Virginia and carried the same through a fair sale;" that at the sale he offered so much of the land, as was necessary to pay the debt, interest and costs, but no one would bid at all on part of the land; that he was compelled to offer it as a whole subject to the widow's dower; that Miller became the purchaser and paid the purchase-money, $625.10; that that was a full price subject to dower; "whether said claim (of dower) was legal or illegal, just or unjust, is a question adjudicated in your honorable court in the case of S. D. Ankrum against respondent and others referred to in the bill; and respondent has yet to learn, that a trustee can revise or reverse a solemn decree of court on a question of dower."

He denies, that the allotment of dower was illegal or unjust. He denies, that his power to sell ceased on the death of the grantor. He alleges, that he managed the trust to the best of his ability and made the land bring all it was possible to make it bring; that several persons bid on the land; that it was sold in the presence of a large crowd of people on a day appointed by law for such sales and a public day in Ripley, the board of supervisors being in session; that the sale was advertised by being posted on the front door of the court-house of Jackson county for over thirty days, during which a term of the circuit court was held; that complainant had notice of the trust-deed, and that Sarah D. Ankrum had not joined in it. He denies, that he abused his trust or colluded

with Sarah D. Ankrum. He avers, that he left the allotment of dower to the commissioners appointed by the court, who he believes acted fairly ; that he had no personal interest in the matter ; that it is not true, that Donahue had no notice of the sale; that Donahue informed Miller of the sale, and it was upon that information, that Miller attended the sale ; that he believes Spencer knew of the sale ; that as soon as he advertised the land he informed Braxton Thomas, another tenant of Spencer's on said land, of the sale ; that he thought at the time, that Spencer had gone South and could not be reached, but he now believes, that Spencer then resided in the State of Ohio. " Respondent did all he could do or was required to do to give Spencer and the world notice of said sale and feels that he did his duty."

Sarah D. Ankrum also filed an answer to the bill, in which answer after admitting the execution of the trust-deed and the various sales she says, that her dower was duly allotted to her by a decree of court, which can not be attacked in a collateral proceeding. She denies all collusion with J. D. Ankrum or any other person and prays, that her rights secured to her in the suit assigning dower may not be disturbed.

L. M. Miller also filed his answer, which it is not necessary to refer to farther than to say, that most of the matters set up in it are averred in a cross-bill filed by him in the cause against his co-defendants and the complainant, and that in his answer he says, that the assignment of the widow's dower was made on the 8th and 9th of September, 1864, and the sale under the deed of trust was on the following Tuesday ; that on the day of sale the counsel of the widow in the proceedings to obtain the assignment of dower accosted him and asked him, if he did not intend to buy the land, to which he replied, he did not, that in the way the dower was assigned the land was worth very little. The counsel " then assured your respondent, that the dower was wrongfully assigned, it being too much, and that he as the attorney for Sarah D. Ankrum would have it corrected, before it was confirmed, and that respondent need have no fear about that, and your respondent relying upon said assurance was induced to bid, feeling that it was his duty to buy in the tract in order to save harmless Fountain Woodward, who had purchased the

fifty acres of him ; and the land was knocked off to your respondent; that he believes, that the land was advertised long enough by the trustee, there was a considerable number of bidders present, some of whom came from Kanawha and Mason counties; that he believes he paid full value for the land, less the *proper dower*, and he did so believing, that the court would correct the assignment before confirming the same ; that on the day of sale the trustee told him, that the widow's dower as assigned was worth more than all the balance of the land."

The cross-bill referred to alleges the filing of the original bill, the allegations of which he substantially recites and asks, that his answer be taken as a part of his cross-bill. He then charges, that at the time J. L. Gibson conveyed the land included in the deed of trust to A. P. Ankrum, James Ankrum advanced the whole of the purchase-money under an agreement then made with said A. P. Ankrum, that said purchase-money should be secured by deed of trust upon the land, which trust was shortly afterwards executed ; that the property was afterwards sold to satisfy the same ; that said trust-property instead of being three hundred and eleven acres was only two hundred and nineteen acres; that the assignment of dower was unjust and illegal, as it embraced all the good land and was in fact worth all the balance of the land ; that he purchased the whole tract subject to *lawful* dower ; that at the sale the counsel of the widow assured him, that the assignment of dower theretofore made should not be confirmed but should be corrected; that the dower assigned was too much and wrong and was oppressive, &c. ;" that it was not confirmed until the spring of 1865, and then without his knowledge ; that he was not a party to the suit brought by Sarah D. Ankrum, nor was Rollins nor Spencer ; that these parties not being parties to that suit were not bound by any decree in it; that dower was assigned to the widow in the whole of the land ; that she was not entitled to dower in the land sold to Rollins, because she united in the deed, nor in the fifty acres sold to him, because it was sold under decree of court; that he denies, that she is entitled to dower in any of the lands ; that the sale to him for $625.00 was more than enough to satisfy the amount secured

by the deed; and that he should have the sum paid by him for the fifty acres returned to him out of the surplus, to wit, $95.00 with interest; that the assignment of dower was wrong, illegal and oppressive and ought not to have been confirmed and should be set aside, and a new allotment and assignment should be made to her according to equity, if she is entitled to dower at all.

The prayer of the bill is, that said allotment and assignment of dower may be set aside, and that the decree confirming the same may be annulled, and that a new assignment may be made according to law and the justice of the case, and for general relief.

It does not appear that any guardian *ad litem* was appointed for the infant defendants. It appears, that Sarah D. Ankrum intermarried with one ———— Lee during the progress of the suit, but when does not appear. The last order in the cause against her in the name of Ankrum was on the 21st of September, 1874. The next order or decree in the cause is against her as Sarah D. Lee, after which the cause proceeds against her in the latter name until the final decree, in which she is spoken of as Sarah D. Lee late Ankrum. It does not appear, that the husband was ever made a party to the cause.

A good many depositions were taken principally as to the value of that portion of the land assigned to the widow, and the adequacy or inadequacy of the price paid by Miller. One witness testified as to the conversation between the counsel and Miller stating it substantially as alleged in the bill and answer of Miller. Donahue testified, that he did not know of the sale; another witness, that he lived within three miles of the land and never knew of the sale; still another, that he lived within one mile and never heard of it; another witness asked the trustee to let him know of the sale, and understood, that the trustee agreed to do so, but never saw the notice and never heard from the trustee.

On the 7th day of April, 1880, the cause was finally heard, and the court pronounced its decree, by which it was determined, that the widow was entitled to no dower in the land, as the debt secured by the deed of trust was purchase-money, but was entitled to an interest in the surplus of the purchase-money arising from the sale to Miller, which the court ascer-

tained to be $84.02; that Joseph Smith, a judgment-creditor of A. P. Ankrum, who had filed his petition in said cause, should be paid the amount of his judgment, $170.00, and that the balance of said surplus, $61.00, should be paid to L. M. Miller because of money paid by him on the purchase of the fifty acres of land sold by decree of court, and that Miller hold the land purchased by him free from any claim of dower on the part of the widow of A. P. Ankrum, and that a writ of possession in favor of said Miller be issued to him for possession of this land.

From this decree Sarah D. Lee obtained an appeal and *supersedeas* to this Court.

*A. I. Boreman* for appellant cited the following authorities: Code of Va. 1860, p. 570 § 4; 7 W. Va. 569; 10 W. Va. 187; 12 Leigh 445; 27 Gratt. 624; 10 Pet. 449; 10 Wall. 308; 9 Leigh 119; 9 Gratt. 323; 12 W. Va. 1; 5 Leigh 627.

No appearance for appellees.

PATTON, JUDGE, announced the opinion of the Court:

The record in this cause raises a number of questions. It is plain, that several necessary parties have not been brought before the court, and that the decree of the court below would have to be reversed on that account if for no other reason; but in assigning the grounds, upon which some of these parties are material to a proper and final determination of the controversy, it will be necessary to consider in a great measure, if not entirely, the whole controversy in the cause. The original bill in this cause was filed for the purpose of setting aside the sale to Miller under the trust-deed, and to procure a proper assignment of dower in the property. Naturally the first question, which arises is: Should that sale be set aside on account of the misconduct of the trustee, in which Miller participated to the extent of losing the benefit of the legal title, which ordinarily in such a sale inures to the benefit of a *bona fide* purchaser from a trustee without notice? No general principles are better settled than, that a trustee is the agent of both parties and must consult impartially the interests of each. He is bound to bring the property to sale in the way, which will secure the best price, and to accomplish this he is required to exercise reasonable diligence and to ob-

serve those precautions, which would naturally be observed by a prudent business-man in an important business-transaction. It is his duty to see, that no encumbrance or cloud upon the title or any impediment to a fair sale for the best price remains unremoved. He is supposed to be the common friend and agent of both parties impartial and disinterested, whose duty it is to act justly and discreetly towards those in interest. In order that the trustee may thus act, a court of equity is always open to him, when the amount due by the deed is uncertain or is in good faith disputed, when any cloud rests upon the title, when a reasonable price cannot be obtained, or *when for any reason* a sale is likely to be accompanied by a sacrifice of the property, which at the cost of some delay may be obviated. *Rossett* v. *Fisher et al.,* 11 Gratt. 492; 1 Tuck. Com. B. II. p. 107; 1 Lom. Dig. 425; *Lane* v. *Tidball,* Gilm. 132; *Wilkins* v. *Gordon et als.,* 11 Leigh 547; *Miller* v. *Argyle's ex'r,* 5 Leigh 460; *Quarles* v. *Lacey,* 4 Munf. 251; *Gay* v. *Hancock,* 1 Rand. 72; *Chowning* v. *Cox, Id.* 306; S. C. 3 Leigh 654 (*Taylor* v. *Chowning*); *Gibson* v. *Jones,* 5 Leigh 370; *Norman* v. *Hill et als.,* 2 Pat. & H. 676.

These authorities not only establish the above general principles but farther show, that if the trustee in neglect of his duty as trustee fails to apply to a court of equity to remove the impediments to a fair sale, by injunction any one having a substantial interest may prevent a sale, until that can be accomplished, or if a sale be made, may apply to a court of equity, when not in default himself, to have the sale set aside.

Applying these principles to the facts of this cause, it will be seen, that a case can rarely arise, in which more reasons existed for the interposition of a court of equity to remove difficulties in the way of a fair sale of the property. Both the grantor and *cestui que trust* had been dead about five years; two *bona fide* purchasers had received conveyances for different parcels of the lands and had thus acquired rights in the trust-property, which they were entitled to have protected against sacrifice; the trustee had become as executor of the original beneficiary a *cestui que trust*; the widow had instituted proceedings to have her dower assigned to her, and dower had in fact been laid off and assigned to her by commissioners

of the court but had not been confirmed ; the justice of that assignment in point of value was in dispute, or rather the assignment was considered so unreasonable by some and so injurious to the property in the mode of laying off the land, that her counsel gave assurances to one, who desired to be a buyer, that it would not be confirmed; the quantity of land stated in the deed to be three hundred and eleven acres, it was claimed by the commissioners appointed to assign dower, was only two hundred and nineteen acres; it was so doubtful whether the widow was entitled to dower at all, that it was finally adjudicated by the circuit court, that she was not entitled to dower in the land but was in the proceeds after paying the trust-debt.   Other circumstances might be mentioned ; but these are sufficient to show the impropriety of a sale without the intervention of a court of equity.   Most of these circumstances were known to the trustee, and many of them, if not all, to the purchaser from the trustee, except the subsequent action of the court.   The fact, that the grantor in the deed had died, was alone sufficient to prevent the trustee from selling without resorting to a court of equity and convening the personal representative and heirs and the *cestui que trust.*

In the case of *Gibson* v. *Jones,* 5 Leigh, Judge Tucker says:  " Indeed an opinion has been entertained by able men, that a trustee ought not to proceed to sell, where the debtor dies, since by his death the duty of redeeming and the benefit of redemption, which were before blended in the same person, are now separated; the duty devolving on the executor, to whom it belongs to discharge debts, and the benefit accruing to the heir, who has a right to demand of the executor, if he has assets, to relieve the trust-subject from the encumbrance. Moreover the heir not being cognizant of the debts is unprepared to defend the estate from an unjust sacrifice.   On these grounds Judge Coalter allowed an appeal, when I was at the bar, though I am unable to say what became of it."   This opinion of Judge Tucker is quoted without dissent in 1 Lom. Dig. 426.   In 2d vol. Min. Inst. 290, this doctrine is announced to be the law by Prof. Minor almost in the very language of Judge Tucker.

It seems to me, that this position is sound and comports with the true view of the respective rights and duties of the

personal representative and the heir; and it is in accordance with the position held by the court in the case of *Bierne* v. *Brown*, 10 W. Va. 748, where it was held, that " in enforcing a vendor's lien against the estate of the vendee, after his death the court ought to require the personal estate in the hands of the administrator to be first ascertained, and how much of it is applicable to the payment of the purchase-money due and should require it to be so applied, before it decrees a sale of the land to pay the lien." *Vide Hull* v. *Hamilton's heirs*, 8 W. Va. 43; *Stewart, adm'r,* v. *Jackson, Id.* 29. In this last case it was held, that " in a bill by an administrator to enforce a sale of real estate by a trustee, on the ground that the debt has been paid by the debtor in his lifetime, the heirs of the grantor are necessary parties." In the opinion Judge Paull says: " Had the bill been filed by the creditor to enforce an execution of the trust, it is manifest, that both the administrator and heirs would have been necessary parties."

These cases all proceed upon the principle, that where there are several persons having separate and distinct rights in a common subject, they should all be convened, before that subject is disposed of, in order that the mutual rights and liabilities may be ascertained and determined. In *Bierne* v. *Brown supra* notwithstanding the complainant had a specific lien on the land, the death of the vendee raised new rights and duties between the personal representative and the heir, which, it was held, must be adjusted, before the vendor would be permitted to sell the land. While there was the lien, which must be satisfied, it was the duty of the personal representative, if he had assets, to discharge that lien in relief of the realty and in protection of the heir. The personal estate is the primary fund for the payment of debts, and the heir was entitled therefore to have that fund exhausted, before the secondary fund to his injury should be resorted to. The vendee's personal representative and heir were before the court in that case; and the complaint was, that a commissioner of the court was directed to settle the administration account, to ascertain whether the personal assets were available to any extent in the discharging of the debt.

I imagine that in any case, where there may be a primary

fund for the payment of a debt, a court of equity will not permit one, who is only ultimately liable, to be called on without resort being first had to the primary fund.  In addition to the reasons given by Judge Tucker it will be seen at once, that the grossest injustice would frequently result, if after the death of the grantor the trustee were permitted to sell without convening the personal representative and heirs, because the heir would thus be compelled to sit by in silence, while his estate was being sacrificed with perhaps an abundant personal estate in the hands of the personal representative to discharge the debt.  The sale might be within a year after decedent's death, which time is allowed to him to ascertain the assets and liabilities, and with propriety he might decline to pay within that time.  If the trustee had a right to sell, the heir would have to sit by helpless and see his land pass to another and at the end of the year receive money from the representative, which if received in time would have saved his property.  Can it be doubted, that a bill of injunction to prevent a sale would lie in his behalf upon an allegation of sufficient personal assets to pay the debt?  It seems to me not.  If such a bill would be entertained, although he may not be able to make that averment, would he not for the same reason be entitled to ascertain that fact by calling on the personal representative to account?  The heir might be an infant unable to act by averring sufficient assets or calling for an account.  Could his land be sacrificed, because the personal representative would not, or could not for want of a sufficient knowledge of the assets pay the debt?  Yet to hold, that the trustee may proceed to sell after the death of the grantor, would result in these consequences.  If the heir or administrator could for these reasons stay the sale, it seems to me, that for the same reasons it would be the trustee's duty to stay it, until it could be ascertained out of which trust-fund—the land or the personal assets—the trust-debt should be paid.  By the death of the grantor, two trust-funds exist for its payment, one a primary fund, the other secondary.  The first should be exhausted first.

I am of opinion therefore, that upon the death of the grantor in a deed of trust conveying land to secure a debt the trustee must resort to a court of equity before selling the land.

The death of the *cestui que trust* and the qualification of the trustee as his executor rendered it improper for him to sell. He could no longer act with that impartial disinterestedness required of a trustee. He had become a party himself. He had ceased to be a trustee and had become a mortgagee with the right of redemption in the mortgagor or his heir. In *Chowning* v. *Cox,* 1 Rand. 306, it was held, "where a conveyance of real estate is made to a creditor in trust to satisfy his own debt, such conveyance is not to be considered as a *deed of trust* but as a mortgage, to which the right of redemption is incident." *Vide* also *Taylor's adm'r* v. *Chowning,* 3 Leigh 654 ; *Breckenridge* v. *Auld,* 1 Rob. 154 ; *Floyd* v. *Harrison,* 2 Rob. 178, 183, 185, 188; 2 Min. Inst. 290.

Without going over in detail the various reasons before enumerated, which should have induced a trustee acting with a view to make the trust-fund bring when sold the best price practicable, and should have caused a discreet, prudent business-man to delay a sale, until those difficulties and circumstances, which were calculated to injure a sale, could be removed, it may be remarked, that there was in this case a seeming disregard of the rights of others, which resulted in great injustice to some of the parties. The purchaser in addition to being aware of many of them was specially informed of a fact with regard to the assignment of dower, which gave him an advantage over other bidders and indicated to him, that there was a doubt at least as to the quantity of land the widow would receive, although the general public supposed it would be as assigned. He is now before the court claiming, that she is entitled to no dower at all in the land, although the land was sold subject to dower, which as assigned was according to the testimony more than half the land in value. Land, which if free from dower was worth from $1,300.00 to $2,000.00, he purchased for $625.00, because of the supposed dower-incumbrance, which he now claims does not exist.

The next question is : Was Sarah D. Lee entitled to dower in this land ? She did not unite in the deed of trust nor in the deed to Rollins, the certificate of her acknowledgment of the Rollins deed being fatally defective in omitting the words " declared she had willingly executed the same." *Leftwich* v.

*Neal,* 7 W. Va. 569. But it is claimed, that the debt secured by the deed was purchase-money of the land. There is no testimony on that subject. In the cross-bill it is averred, that James N. Ankrum advanced all the purchase-money for A. P. Ankrum to one Gibson, and A. P. Ankrum agreed to give a deed of trust to secure its payment, which was shortly afterwards done. Taking the averment of the cross-bill to be true, it seems to me, that the payment by James N. Ankrum was only a loan of money to A. P. Ankrum and was in no sense the purchase-money of the land. The deed was executed to the purchaser, the vendor was paid, and the money to make the payment was loaned by another, and a deed of trust was taken to secure its return. The decree recites, that there was an answer to the cross-bill; but none appears in the record. However upon the record as it now stands, I think, she was entitled to dower in a portion of the land and in the whole of it at the election of Spencer as to the one hundred acres. He was not a party to the assignment of dower under the decree of the court and is not bound by it. By section 12 chapter 110, Code of 1849, p. 476, it is provided, "that on the application of one claiming under an alienation made by the husband and in his life-time a court of equity may grant him relief from such recovery"—(that is of dower)—"on the terms of his paying to the widow during her life lawful interest from the commencement of her suit on one third of the value at the husband's death of the real estate so aliened deducting the value of such permanent improvements then existing, as may have been made (after the alienation) by the alience or his assigns." The same provision is contained in section 12 chapter 110 of the Code of 1860, p. 533.

I am of opinion to reverse the decree of the circuit court with costs to the appellants and against the appellees, John D. Ankrum and L. M. Miller, and to remand the cause to that court with leave to the complainant, Spencer, in the original bill and the complainant, Miller, in the cross-bill to amend their bills and make the personal representatives, James N. Ankrum and A. P. Ankrum, and the husband of Sarah D. Lee, if living, parties defendant with instructions, that when the circuit court has set aside and annulled the sale and deed made by John Ankrum, trustee, to Lewis M. Mil-

lĕr and the assignment of dower made to Sarah D. Lee mentioned in the bill and proceedings, it shall assign dower to her in such portion of the land conveyed in said trust-deed, as was not aliened to the complainant, Warrick B. Spencer, and in that portion also, unless he shall make application in this cause for relief in accordance with the provisions of section 12 chapter 110 of the Code of Virginia of 1849, in which case the court is instructed to grant the relief prayed, the interest therein provided for commencing to run at the date of the institution of this suit by Warrick B. Spencer, deducting from such interest the value of the rents and profits she may have received or ought to have received under the former assignment of dower, from any portion of the land bought by Warrick B. Spencer; and in the assignment of dower the said Sarah D. Lee shall be charged with such rents and profits, as she has received or ought to have received under the assignment of dower heretofore made, and shall be allowed such rents and profits as she is entitled to according to law; and this cause is to be further proceeded with according to the principles settled in this opinion, and further according to the principles and rules governing courts of equity.

---

GREEN, JUDGE:

On one question discussed by brother Patton I propose to express my views, as they differ from his to a certain extent. That question is, whether in a deed of trust conveying land to secure a debt the death of the grantor disables the trustee from executing the trust, and whether such trust *must* in every such case be enforced in a court of equity. There are cases, where the trustee is utterly incapacitated to execute the trust, as where the trustee and the creditor secured by the deed is the same person, for such a deed is but a mortgage, and it can only be foreclosed in a court of equity. So when the trustee dies, the legal title descends to his heir, who holds it as trustee, but he is utterly incapacitated from selling the land, because the power conferred by the deed and the duty thereby imposed was a *personal confidence* and can only be executed by the trustee named in the deed in person. In all

such cases as a matter of course a court of equity would, if called upon, enjoin the trustee or his heir from selling the land, and if not called upon, and the land was sold and conveyed by the trustee or heir, a court of equity would generally as a matter of course set aside the deed. For though the deed would carry the legal title, it would be held to be a nullity in a court of equity, because of the utter incapacity of the trustee or heir in such a case to sell the land. But even in such cases it has been held, if the sale by the trustee was fair and accompanied by the silent acquiescence of the debtor; who is apprised of it and makes no objection, it will not be set aside. See *Taylor* v. *King*, 6 Munf. 366; *Chowning* v. *Cox et al.*, 1 Rand. 311; *Breckenridge* v. *Auld*, 1 Rob. 154; *Floyd* v. *Harrison*, 2 Rob. 178.

But the cases, in which a trustee is thus utterly incapacitated to act, and in which a court of equity will on this ground without any enquiry enjoin in him from acting, are but few. There are however many cases, in which a court of equity would enjoin the trustee in such a deed from selling the land in the manner prescribed in the deed, not because he was incapacitated to sell but for a very different reason. It is the duty of such trustee to act in executing such trust in an impartial and disinterested manner and with regard to the interests and rights of both the grantor and the creditor secured disregarding any suggestions by either of them inconsistent with the character he holds. See *Quarles* v. *Lacey*, 4 Munf. 251; *Lane* v. *Tidball*, Gilm. 132. It is therefore the duty of the trustee to decline to sell the land, if there be obstacles in the way of his obtaining a fair price for it, which he cannot remove, but which could be removed by the interposition of a court of equity. If he is proceeding to sell under such circumstances, a court of equity, if applied to, would enjoin him, not because he was incapacitated to sell, but because in making the sale under such circumstances he was violating his duty as the impartial trustee of both parties. If there be a cloud on the title arising from an adverse claim, the trustee would for this reason be enjoined from selling. *Gay* v. *Hancock*, 1 Rand. 72; *Bryan* v. *Stump*, 8 Gratt. 247. And for like reason such injunction would be awarded, if there were prior incumbrances. *Miller* v. *Trevilian*, 2 Rob. 1. When the sum

to be raised was reasonably doubtful, it might reasonably be expected to injuriously affect the bidding at the sale, and therefore such sale would be enjoined. See *Wilkins* v. *Gordon et al.,* 11 Leigh 527.

It is obvious, that in this class of cases the injunction is not to be awarded and perpetuated as a matter of course, but only where the circumstances are shown to be such, as would prevent a fair price being obtained for the land, if the sale was made by the trustee; for then only would it be his duty to desist from selling. In this these csaes differ from the first class, where in the view of equity the trustee himself is incapacitated from selling, and therefore he would as a matter of course be enjoined from proceeding to sell.

There is still a third class of cases, in which a court of equity would decline to enjoin such a trustee from selling pursuant to the provisions of the deed, though in so doing he was proceeding in violation of established rules in the selling of real estate under the supervision of courts of equity. Thus it is an invariable rule of a court of equity, that it will not permit the sale of land to satisfy a debt whether secured by a mortgage or a judgment-lien, and though the party may have been for years in default in its non-payment, without first giving the debtor a reasonable time to pay the sum and thus avoid the sale. So as a general rule a court of equity will not sell land for cash; and the circumstances would indeed have to be very peculiar, which would justify a court of equity in ordering the sale of land for cash. And yet *it is* an everyday practice for trustees in such deeds of trust to sell for cash and immediately on default of *the debtor without* any reasonable time being given him to avoid the sale by the payment of the debt. And this conduct of the trustee would not be enjoined by a court of equity, because the grantor in his deed has expressly stipulated, that his land may be sold for cash and immediately on his default in the payment of the debt.

Having taken this general view of this subject I am now prepared to consider the question, whether when a grantor in such a deed of trust dies, a court of equity ought or ought not to enjoin the sale of the land by the trustee. This case certainly does not belong to the first class, of which we have spoken. The death of the grantor in the deed certainly does

not incapacitate either in law or equity the trustee from sell-ing and conveying the property and therefore render it the duty of a court of equity in every such case to enjoin the making of the sale. There are very many titles both in this State and in Virginia held under deeds executed by such trustees after the death of the grantors in the deeds of trust. These deeds certainly cannot at this late day be held invalid as executed by a party, whom a court of equity regards as in-capacitated to make such deed. The only real difficulty is to determine, whether when the grantor in the deed of trust dies, the case belongs properly to the second class of cases we have named or to the last class. Strong reasons may be urged, why at this late day the courts ought not to begin a practice of enjoining a trustee in any case from selling, because the grantor in the deed of trust has died. So far as is known, there has never been any interference by a court of equity with a trustee's selling land, for the reason that the grantor was dead, except in a single instance. We learn from Judge Tucker's opinion in *Gibson* v. *Jones,* 5 Leigh 374, that some inferior court probably about the beginning of this century did award an injunction forbidding a trustee to sell on this ground, but on mature consideration he dissolved this in-junction, and to this order dissolving this injunction Judge Coulter, of the Court of Appeals, granted an appeal. What became of the case we do not know. It is hardly probable, that the action of the circuit court dissolving the injunction was ever reversed, or it would have been made known to the profession. The probability is, that the case was settled by the parties, and no decision was ever rendered by the Court of Appeals.

This long acquiescence, so far as the actions of our courts are concerned, in the practice of trustees selling lands after the death of the grantors in the deeds of trust taken in con-nection with the provisions in the Code of Virginia of 1849, referred to by brother Patton, which certainly must be re-garded as recognizing this as an existing practice and as not prohibiting its continuance is a strong reason for holding, that such practice ought not to be now interfered with by courts of equity. The least weight certainly, which can be given to this argument, is, that where such sale has been

made by a trustee after the death of the grantor in the deed of trust, and a conveyance has been executed to the purchaser, the fact, that the sale by the trustee was made after the death of such grantor, ought to have no weight in determining the question, whether such deed should be vacated. If such deed be vacated, it must be for some other and better reason. But while this long-continued practice has never been adjudged wrong by our courts, still it has from time to time been disapproved apparently by eminent judges and authors, as is shown by the quotations from Judges Tucker and Lomax and Professor Minor given by brother Patton, to which I may add, that there is no decision of the Court of Appeals of Virginia or of this State nor the expression of any opinion by any judge in any cause in either State approving of this practice.

Our statute-law referred to by brother Patton, and which is in this respect the same, as that contained in the Virginia Code of 1849, it is true, as I understand it, authorizes a trustee after the death of the grantor to sell for *cash* and after paying expenses and satisfying the trust to pay over the balance to the grantor's representatives. While I must regard this statute as recognizing the right and duty of the trustee in such a deed of trust *in some cases* to sell the land after the death of the grantor, I do not interpret it as forbidding a court of equity to enjoin him from selling the land after the death of the grantor, when the circumstances are such, that he would in so doing violate his duty as the impartial trustee of both the grantor's heirs and the creditor secured, any more than this statute forbids this interference by a court of equity, when the trustee proposes to sell in the lifetime of the grantor in disregard of such duty on his part. I can see therefore no reason, why we may not even at this late day enquire into the circumstances brought about in a particular case by the death of the grantor in such deed of trust, and if these circumstances in the particular case would make it a breach of duty in a trustee, who is required to be impartial between the grantor's heirs and the creditor, to proceed to sell the land, why he ought not to be enjoined by a court of equity from the breach of his duty.

But it may be said, that courts of equity have not gone be-

yond the point of interfering, when the trustee was about to sell land under circumstances, which would lead to its sacrifice, and that it would be as likely to bring a full price after the grantor's death as before; and that the adjudged cases do not justify the conclusion, that a court of equity ought to interfere to prevent a sale, wherever a court of equity under the circumstances would not, if it were administering the trust, make a sale. It is true, that we cannot fairly draw such conclusion from the adjudged cases. Thus a court of equity in administering a trust will not sell land without first giving the debtor a reasonable day of payment, so as to afford him an opportunity of preventing the sale, no matter how long he may have been in default. And it certainly would not enjoin a trustee for not giving this reasonable day of payment after default. It is also true, that courts of equity have generally confined their restraint of a sale by a trustee to cases, where under the circumstances the land was likely to be sacrificed, if the sale was permitted. But the reason of this interference, it seems to me, extends also to other cases. What is the reason? Is it not, that the trustee in disregard of his duty to act impartially is about to sacrifice the interest of the debtor or grantor for the benefit of the creditor secured? And may not the interest of the heir of the grantor be thus sacrificed by a sale of his land, even though it brought a fair price? If the personal representative of the grantor has in his hands ample funds, wherewith to pay the debt secured, and it is primarily his duty to pay it at the expiration of a year from the death of the grantor, is it not obviously the duty of the trustee not to sell the land till the expiration of the year? And in so selling would he not depart from the impartial character, which the law imposes on him? And according to the true principle underlying the adjudged cases ought not a court of equity to interpose and prevent such breach of duty by enjoining the sale? Cannot the court in determining the general duty of a trustee look to the practice of a court of equity in administering a trust? It seems to me they can. It is true, that in so looking they ought not to require or expect the trustee to observe these practices of a court of equity in all their minutiæ; for they lay down for their guidance general principles, which they apply to all cases

without regard to their particular circumstances. Thus they say a reasonable day of payment should be given the debtor, before his land is advertised for sale. And they apply this rule inflexibly to a creditor, whom the record shows to be utterly insolvent, and when his land is to be sold for large debts amounting to thousands of dollars, though it is obvious that he could not pay the debt in any reasonable time and the land must be sold. See *Baugher* v. *Eichelberger*, 11 W. Va. 217.

So too it would not permit the heir's-land to be sold, if the personal estate was primarily responsible for the debt, until the personal representative had settled his accounts, though it might be apparent, that in this particular case there was but little personal estate, which could be applied to the debt to the relief of the heir's land. A trustee on the other hand should not be governed by any such inflexible rules. He must use a wise discretion in not selling the land of the heir, when by so doing he would do him a substantial injustice not a mere technical wrong. If there be in the hands of the personal representative personal estate, which would relieve the heir's land from the payment of a substantial part of the debt, the trustee would be doing the heir substantial injustice by selling this land before the application of this personal estate to the discharge in whole or in part of the debt, or until at least time was afforded the heir to compel the personal representative to perform this duty of paying this debt to the extent of the funds in his hands applicable thereto, when there were funds so applicable of considerable amount. If on the other hand the personal representative had in his hands little or no funds applicable to the debt, or if it was obvious, that the sale of all the land in the deed of trust would be required after the application to it of all the personal estate, which could be so applied, or so long a time had elapsed since the death of the grantor in the deed of trust, that ample time had been afforded the heir to compel the personal representative to apply the assets in his hands to the payment of the debt, then no injustice would be done the heir by the trustee selling his land ; and a court of equity ought not under these circumstances to enjoin the sale. My conclusion is, that whether a court of equity ought or

ought not to enjoin a sale of land by such a trustee after the grantor's death depends upon the pecuniary circumstances of the grantor at his death and upon the size of the debt secured by the deed of trust as compared with the land conveyed by the deed of trust and upon the length of time after his death, when the trustee proposes to make the sale, and, it may be, on some other circumstances, which might be presented in a particular case.   Upon the other questions involved in this case I concur in the opinion of brother Patton.

The Other Judges Concurred.

Decree Reversed.   Cause Remanded.