# WHEELING.

BURKE AND KEATLEY v. ADAIR et al.

Submitted June 30, 1883—Decided December 8, 1883.

(*SNYDER, JUDGE, Absent.)

If a tract of land is conveyed to a trustee as security for a debt with authority to sell the tract of land at public auction, after advertising it in a specified manner, and the trustee makes such sale and conveys the land to a purchaser, who has his deed duly recorded, and a suit is then brought by the grantor or one claiming under him to set aside such sale and deed, because the tract of land was not advertised in the manner specified in the deed of trust, the burden of proving this allegation is on the plaintiff, as after the making of the deed to the purchaser by the trustee and its recordation, it will be presumed that the land was properly advertised, and this presumption must be rebutted by some proof to the contrary.

GREEN, JUDGE, furnishes the following statement of the case:

A judgment was recovered on May 15, 1874, in the circuit court of Monroe county for the use of A. A. Chapman for two hundred and eighty-two dollars and ninety-five cents with interest from that date against Nancy Burke; and on October 17, 1874, another judgment in the same suit for the use of same party was recovered for four hundred and forty-two dollars and fifty cents with interest from that date being the residue of the debt which had been sued on. The reason that two separate judgments were rendered in this suit against Nancy Burke was, that she had at the time the first judgment was rendered put in a plea of offsets, and a judgment was rendered only for the undisputed portion of the debt;

*Counsel below.

but she having subsequently withdrawn her plea of set-off, judgment was rendered for the balance of the debt. The costs on these judgments were forty-seven dollars and forty-two cents. For these judgments and costs executions were issued and came into the hands of Wm. Adair jr. as a deputy sheriff of said county. At the request of the defendant Nancy Burke he paid off these executions, she promising to secure the amount advanced for her by a deed of trust on her farm in said county. He afterwards loaned her eighty dollars and paid for her her taxes amounting to twenty-four dollars and fifty cents and paid for her at her request fifteen dollars to Miss Speckaid. All these advances for her use and money loaned her were secured by a deed of trust on her farm not however including the amount of this second judgment, which had not then been paid for her. After its payment for her by Wm. Adair jr. he went to her house in company with a notary public McNutt and one Harvey, who at her request was to represent her in the settlement, which it was proposed should be made. The settlement was made, and the following is a memorandum of the charges of Wm. Adair jr. against Nancy Burke made out at that time by Harvey:

| "A. A. Chapman bond | $ 282 95 |
|---|---|
| Interest 4 months and 10 days | 6 14 |
| Commission | 15 70 |
| Tax | 24 50 |
| Cash paid Miss Speckaid | 15 00 |
| Recording deed | 2 25 |
| Justice and writing deed | 1 50 |
| Cash | 80 00 |
| Office costs | 13 77 |
| | $ 441 83 |
| Interest two years | 53 01 |
| Second judgment | 546 45 |
| | $1,041 29 |
| Serving notices on second judgment | 2 25 |
| | "$1,043 54" |

These charges amounted to one thousand and forty-three dollars and fifty-four cents, and for that amount she executed her bond to Wm. Adair jr. dated on the day of this settlement, March 3, 1875, and payable on or before September

21, 1876; but this bond did not bear interest from date, as it might properly have done. This bond was then secured by deed of trust on her farm, on which she resided in Monroe county, containing one hundred and fifty acres. It differed in form from that prescribed in our Code. only in this, that the sale by the trustee was to be made at the Red Sulphur Springs in Monroe county, which was about a mile from said farm, the terms of sale were to be for cash, and a commission of five per cent. was reserved to the trustee. This bond and deed of trust and statement were read over and explained to Nancy Burke by James Harvey, who at her request signed her name to the bond and to the deed of trust, she being a very old woman then eighty-eight years of age, in good health however and with mental powers unimpaired. After the deed was signed, she acknowledged it before McNutt the notary public, and it was duly recorded. There was no controversy or dispute of any sort between the parties, all appearing to be entirely satisfied with this settlement. It was a statement of all matters between them including the indebtedness, which had been secured by the first deed of trust, being intended to be in lieu of that, and time being given on the debt secured by it. Nothing else but that debt to Adair and the several judgments against her, which had been paid by Adair with some costs on them, were included in this settlement. The notary proposed to include in the deed of trust a small debt, which Mrs. Burke owed him; but she objected saying that the debt secured by the deed of trust was as large a debt as she wanted to be put as a lien on her farm; and the notary's debt was not put in the deed of trust.

Mrs. Nancy Burke authorized Harvey to sell this farm for her; and he endeavored to do so but failed to get a purchaser. Wm. Adair waited for more than two years after his debt was due, when, nothing having been paid on it, he requested the trustee, L. C. Hale, to sell the farm; and accordingly he on the 23d of April, 1879, advertised it for public sale for cash at the Red Sulphur Springs on May 31, 1879. Mrs. Nancy Burke procured an injunction and stopped this sale. This injunction was dissolved on June 14, 1879, and the trustee again advertised the farm for sale at public auction for cash at the Red Sulphur Springs, as required by the deed

of trust, and on that day he sold it, William Adair jr. being the purchaser at the price of one thousand two hundred and ninety dollars, a sum just sufficient to pay the debt secured by the deed of trust and the costs attending the sale.

When the first deed of trust was given, Mrs. Nancy Burke agreed to pay to William Adair jr. ten *per cent.* interest on the money he had advanced for her secured by the first deed of trust. She paid nothing on it; and when the second deed of trust was given in lieu of it, this ten *per cent.* was not charged on what was secured by the first deed of trust but only six *per cent. per annum,* and some eighteen months further time was given without any interest to be charged for that time. After this sale on August 12, 1879, the trustee L. C. Hale, made a deed conveying said tract of land containing one hundred and fifty acres to the purchaser, William Adair jr. This deed was acknowledged and was recorded duly on October 22, 1879. But shortly prior to this sale, on the 30th day of May, 1879, Nancy Burke conveyed this farm to James Keatley, which deed was recorded July 25, 1879.

In an answer of William Adair jr. to an amended bill of Nancy Burke in her injunction suit he states, that about November, 1879, after he had purchased said farm and got a deed from the trustee, he brought a suit against her for unlawful detainer, and by the judgment of a justice of the peace obtained possession of this farm; but this answer is not even sworn to, and there is not any evidence in the record, that this statement is true. He also says in his answer, that when this occurred, he of his own motion entered into an agreement with her, whereby he allowed her to remain in possession of the house upon said land and a few acres in connection therewith, but that she contrary to the provisions and spirit of said agreement continued to prosecute her suit against him. Against the objections of the plaintiff in this injunction suit, Mrs. Nancy Burke, he had, with a deposition given by him, before that filed an agreement, which he had made with her, claimed to be the one referred to in his answer, which agreement was as follows:

"This memorandum of an agreement made this November 14, 1879, between Wm. Adair, jr., on the one part, and Nancy Burke on the other part. Witnesseth: That the said

Nancy Burke hereby surrenders to the said Wm. Adair, jr., possession of the entire farm and houses where she now resides and which property said Adair recently purchased under a deed of trust sale, and the said Adair agrees to allow the said Nancy Burke to occupy the house in which she now lives with Mary Burke, and to have free use of the same and five acres of land on the eastern end of the farm so as to include the orchard without crossing the road, so long as the said Nancy Burke may live. She may allow Mary Burke to remain in said house with her, but is not to permit any other person to occupy or use the same or the land mentioned without the consent of the said Adair. And it is further agreed, that at the death of the said Nancy Burke the possession of said house and five acres of land is to pass to the said Wm. Adair, jr. The said Nancy Burke is also to have free pasturage for one cow and the use of one half the garden and the use of necessary fire wood from the land. It is understood that this grant to Nancy Burke is as a donation from the said Wm. Adair, jr., and nothing is this agreement is to be so construed as to interfere with the use of the other buildings and land by said Adair.

"Witness our hands and seals the day and date above written.

> "WM. ADAIR, JR., [SEAL.]
> "NANCY BURKE.    [SEAL.]"

But more than three months before this agreement is dated, Nancy Burke conveyed this farm to James Keatley. This conveyance to him was before the sale by the trustee Hall to Wm. Adair, jr. Nearly two years and a half afterwards James Keatley brought a suit in chancery against Wm. Adair, jr., Luther C. Hale, the trustee, and Nancy Burke to set aside this deed of the trustee to Wm. Adair, jr. The injunction suit, to which we have referred, brought by Nancy Burke against Wm. Adair, jr., Wm. Adair, sr., and Luther C. Hale, the trustee, was brought in the circuit court of Monroe county. Her bill sets out that her original indebtedness for the two judgments, of which I have spoken above, was to the father of Wm. Adair, jr., the defendant, Wm. Adair, sr. She states the transfer of her bond to him, as before stated, and the suit brought on it for the use of

Andrew Chapman, as before stated, and the judgment on it on October 17, 1874, for four hundred and forty-two dollars and fifty cents with interest from that time; but she entirely omits to state or refer to the previous judgment for the balance of said claim rendered on May 15, 1874, for two hundred and eighty-two dollars and ninety-five cents with interest from that time, but represents the last judgment as the whole of this claim. She then proceeds to give her account of the giving of the deed of trust on March 30, 1875; but it is a very confused account, she mixing up with it in her mind the previous deed of trust she had given probably some two years before, and which was acknowledged before Wm. Clarke, a justice of the peace. She had then forgotten, that she had ever executed another deed of trust. And speaking of the first deed of trust confounded in her mind with the second she asserts that she only owed Wm. Adair, jr., this four hundred and forty-two dollars and fifty cents and interest, which had been reduced some, how much she does not state; and she thought she was only executing a deed of trust on her farm to secure the balance, which might be due on this judgment of four hundred and forty-two dollars and fifty cents and the balance of the purchase-money which she owed him for a horse. She claims that on this she is entitled to a credit of about two hundred dollars, the items of which are those filed in the common law suit, in which said judgment was entered, and subsequently withdrawn by her counsel in said suit. She says, she was greatly surprised on receiving a copy of the advertisement of said land by the trustee, and files with her bill a copy of this advertisement. She asks an injunction to prevent this sale, and that no sale be permitted under this deed of trust except for such an amount as is ascertained in this cause to be actually due from her to Wm. Adair, jr., intended to be secured by this deed of trust, and for general relief. This bill was sworn to by her, and an injunction as prayed for was awarded by a circuit judge.

An answer was filed to this bill by Wm. Adair, jr., sworn to, in which he states the facts substantially as hereinbefore sworn to and denies all the allegations in said bill, which are inconsistent therewith. Eleven days' notice in writing was

given by Wm. Adair, jr., that on June 14, 1879, he would move the judge of the circuit court of Monroe county in chambers at Lewisburg, to dissolve the injunction awarded in this cause; and on that day this order was made by him.

"NANCY BURKE, *Plaintiff*,
       *vs.*                 } In Chancery.
"WM. ADAIR JR. *et als.*, *Defendants.*

"This cause came on this 14th day of June, 1879, in vacation, in chambers at Lewisburg, West Virginia, to be heard on plaintiff's bill and exhibits therewith filed, order of injunction awarded on the 23d day of May, 1879, the answer of defendant William Adair Jr. this day filed and exhibits, on motion of said defendant to dissolve said injunction with notice thereof duly executed, and was argued by counsel for said defendant and by counsel for said plaintiff. Upon consideration whereof it is adjudged, ordered and decreed that said injunction be dissolved."

The sale of said farm was then advertised by the trustee, and the farm was sold, and a deed to the purchaser, Wm. Adair jr. was made as hereinbefore stated. Afterwards, on October 15, 1879, Nancy Burke filed an amended bill in said cause, in which she admits the confounding by her of the first and second deeds of trust as above stated. She admits also the error, which she had committed in stating the amount of the bond, on which was rendered the judgment against her owned by Wm. Adair, jr., as above stated. This error amounted at the time of filing her bill to about five hundred and twenty-one dollars. She denies that she ever saw the statement filed with the answer of Wm. Adair jr. and averred by him to be the statement made out, when it was said she executed her bond on March 3, 1875, for one thousand and forty-three dollars and fifty-four cents, and to secure which it was stated she executed the second deed of trust, which statement has been hereinbefore given. She asserts most positively, that none of the items of this statement is correct except the two judgments, the item of fifteen dollars paid to Miss Speckaid and seventy dollars instead of eighty dollars cash. The other items in this statement she says she does not owe. She alleges, as hereinbefore stated,

the sale of her farm by the trustee and its purchase by Wm. Adair jr. at one thousand two hundred and ninety dollars. She alleges that the deed of trust, under which the sale was made, was not her deed; that she never executed it, or authorized any one to sign it for her, and that she never acknowledged it before J. P. Nutt, the notary public, or before any one else, or if she ever did it was under a misapprehension of what she was doing or under a misrepresentation of the contents of the paper, which she was acknowledging. She was, she says, in the ninety-sixth year of her age, when this amended bill was filed; but she thinks she can not be mistaken in saying, she never executed more than one deed of trust, and that was the one acknowledged before Clarke, the justice of the peace. She also denies that she executed the bond secured by this last pretended deed of trust. This amended bill is sworn to by her.

Wm. Adair jr. filed an answer to this amended bill. He denies all these allegations inconsistent with the facts hereinbefore stated, which he reiterates, and alleges that the bond and last deed of trust given by her were read over to her, and her name was signed to both of them by James A. Harvey at her request, the said Harvey representing her in the settlement; that she was capable of transacting business; that no fraud was practiced by him or by any one for him in the procuring of said bond and deed of trust, or in any other way whatever. All these statements in this answer were fully proven by the depositions of Wm. A. Adair jr., James A. Harvey and the notary public, J. P. McNutt.

Against the testimony of these three witnesses, which was clear and consistent, to support the statement of the bill and amended bill the plaintiffs examined Nancy Burke, who proved that she was ninety-six years old; that she could read and write a little; that she recollects nothing about the giving of the second deed of trust; that if James Harvey made the statement of the amount, which she owed Wm. Adair jr., and prepared the bond and deed of trust, he did not read them or explain them to her.

Mary Jane Burke, a witness and former slave of Nancy Burke, testifies that she was present, when the second deed of trust was executed, and that it was not read or explained

to Mrs. Nancy Burke.  She states that the persons present, when it was executed, were Wm. Adair jr. James A. Harvey and J. P. McNutt and Lewis Clarke.  All the other persons, who, she says, were present, deny that Lewis Clarke was there.

Lewis Burke, a negro and son of Mary and a former slave of Nancy Burke, who was then at the house, states also that Clarke was not there.  He says, he also was present, when when the first deed of trust was given.  He states that the two judgments and eighty dollars the price of the horse were in the second deed of trust and it was given to take up the first deed of trust.

Another witness testified that after the sale of this farm by the trustee, he heard Mrs. Nancy Burke say, she was sorry she ever gave this deed of trust.

Another witness testified, that shortly before this sale she told him she owed Wm. Adair jr. about one thousand dollars, which she wanted to pay, and wished in order to do so to sell her farm; that James A. Harvey was her agent to sell this land for this purpose.

J. P. McNutt, James A. Harvey and Wm. Adair jr. prove clearly and in detail all the facts heretofore stated as occurring, when this deed of trust was executed; that the statement of the indebtedness of Nancy Burke to Wm. Adair jr. was made out for Mrs. Nancy Burke by James A. Harvey, who was present at the settlement at her request; that it and the bond given by her and the deed of trust were read over to her and explained by James Harvey, and that she understood it and was satified with these papers, there being no controversy about the amount of her indebtedness; and that he at her request signed her name to the bond and deed of trust and witnessed the signature; and that she though very old was in her usual health, and her understanding was unimpaired by her age. This was all the evidence in this cause.

James Keatley filed his bill on March 20, 1882, in the circuit court of Monroe county against Wm. Adair jr., Nancy Burke and Luther C. Hale, trustee.  It sets out the giving of this last deed of trust by Nancy Burke and the making of a deed to him of said farm by Nancy Burke on May 30, 1879, and the sale of said land afterwards by Luther C. Hale, the

trustee, on August 9, 1879, and its purchase by Wm. Adair jr. for one thousand two hundred and ninety dollars and the making of the deed for it to him by the trustee Luther C. Hale on August 12, 1879, as hereinbefore stated. This plaintiff also alleges that the said sale was irregular, null and void as it was made without any notice to or knowledge of the plaintiff; that this land was not advertised; that the notice of this sale was never served on the plaintiff nor on Nancy Burke, the grantor in the deed of trust, nor was it posted as required by law or in any other manner; that this land is worth at least three thousand dollars and could have been sold for that amount, if properly advertised; that it was sold at a ruinously inadequate price; that no one was at the sale but the trustee and the purchaser Wm. Adair jr.; that the sale was not made on the premises as required by law; that at the time of the sale the debt and commission for the sale amounted to one thousand two hundred and twenty-five dollars, yet the trustee without requiring the difference between this and the price at which the land was sold, which was sixty-five dollars, to be paid by Wm. Adair jr. made him a deed for the land, and thus the purchaser Wm. Adair jr. by collusion and fraud procured land worth three thousand dollars for one thousand two hundred and twenty-five dollars. The prayer of this bill is, that said sale may be set aside as illegal and void, that the plaintiff may be put in possession of said land, and for general relief.

Wm. Adair jr. filed an answer to this bill alleging that the conveyance of this land to James Keatley was made without consideration and to defraud him the respondent. It denies that the sale by the trustee to him was irregular, illegal and void, but on the contrary was regular, legal and valid, made with notice to and full knowledge of the plaintiff; that the provisions of the deed of trust and of the law in reference to trust-sales were fully complied with; that the land was properly and legally advertised; that written notice of the sale was given to the plaintiff and to Nancy Burke the grantor more than twenty days before the sale; that the plaintiff in this suit was the real plaintiff in the injunction-suit brought in the name of Nancy Burke; that the land brought at the sale its full cash-value; that the plaintiff was

present at the sale; that the sale was made at the Red Sulphur Springs as required by the deed of trust on an election-day when a great number of persons were present; that the price he bid for the land, one thousand two hundred and ninety dollars, was just equal to his debt secured by the deed of trust including the cost of executing the deed of trust; and that no surplus remained in the hands of the trustee. He denies all collusion and fraud and asks that the bill be dismissed with costs.

A considerable number of witnesses were examined by both the plaintiff and defendant. The plaintiff himself and two witnesses, whom he examined in reference to the value of the land, estimate its value from two thousand two hundred and fifty dollars to two thousand five hundred and fifty dollars. One of these witnesses married a niece of the plaintiff and was not a land-owner. The other witness was also connected with the plaintiff, his son having married the plaintiff's daughter. The defendant examined six witnesses with reference to the value of this land; all of whom were well acquainted with it and apparently capable of putting an estimate on its value intelligently. Four of them say it was worth one thousand three hundred dollars and two of them from one thousand two hundred and fifty dollars to one thousand three hundred dollars. There is no proof of what took place at the time of the sale except that the trustee proved, that it took place on April 9, 1879, and that the plaintiff was present; and the plaintiff himself proves, that there were a good many persons present; that it took place on an election-day and within one hundred and fifty yards of the voting precinct. There is no proof as to the number of bidders for the land or of anything, which occurred at the time of the sale. No copy of the advertisement of this sale is found in the record. But it was stated in the deposition to be a notice of a sale of land under a deed of trust executed by Nancy Burke to L. C. Hale trustee for the benefit of Wm. Adair jr. It was proven, that this notice was posted at the front door of the court-house of Monroe county on July 3, 1879. It was a notice, the witness says, of a sale under the deed of trust dated March 30, 1875. It is proven, that this notice of sale was posted on July 1, 1879, at Lins-

dale on the door of the store-house of Ballard & Brogler.
Another notice was posted at Peterstown on the door of the
store-house of Clark. It was posted as soon as received
from the trustee, but the date is not remembered.

The trustee proves, that he wrote the notices of sale on
July 1 or 2, 1879, and on the same day he served a copy of
the notice on Nancy Burke and read and explained it to her.
He mailed on the same day a copy of this notice to Daniel
Boone at Centreville, to A. A. Nickle at Union (this was the
one he posted at the door of the court-house), to S. F. Clarke
at Peterstown (this was the one he posted on his store). The
trustee posted one himself at the Red Sulphur Springs in
said county, and he received prompt answer from all these
parties, that these notices had been posted, the last of these
answers being on July 3, 1879. The trustee drew the notice
posted at Peterstown. He says James Keatley made no ob-
jections to the sale on or before the day on which it took
place.

James Keatley, the plaintiff, admits that his aunt Nancy
Burke sent him the copy of the notice given to her, and that
he was present at the sale and was attending to the matter
for his aunt, and that he made no objection to the sale. With
reference to the making of the deed to him by his aunt he
proves, that she was indebted to him for blacksmithing over
one hundred dollars; that he had at times let her have
money; that he attended to her business, travelling at his
own expense attending to her business, and that she had
no family; that there was no other consideration for this
deed except these past services and favors; and that there
had been an understanding with him, that she would let him
have this land, for some time before the deed was made to
him, from a time indeed shortly after the deed of trust was
given by her on this land.

On March 25, 1882, the circuit court of Monroe county on
these pleadings and proofs in these causes rendered the fol-
lowing final decree:

"These causes came on this 20th day of March, 1882, to
be heard together under protest from James Keatley, as to
bringing them on to be heard together, the first on the
papers formerly read, in the answer to William Adair jr. to

the amended bill of the plaintiff, with general replication thereto, and on depositions and exhibits filed: The second, on the bill taken for confessed as to all the defendants except William Adair jr., on all of whom process has been duly executed, on the answer of William Adair jr. with general replication thereto, on depositions with exceptions thereto and exhibits filed, and on papers formerly read, on motion to set aside sale made under deed of trust mentioned in the proceedings on upset bid and bond therewith filed, and was argued by counsel. On consideration whereof, the court doth adjudge, order and decree that the bills in these causes be dismissed, and that the defendant, William Adair jr., do recover of the plaintiffs respectively, his costs by him in these causes expended. And a writ of possession is awarded the defendant, Adair, to put him in possession of the land."

The upset bid and bond referred to in this decree was an obligation of James Keatley with good security, whereby he bound himself, if this court ordered a re-sale of this land to make it bring one thousand two hundred and ninety dollars and enough in addition thereto to pay the costs of the sale and also the costs of this suit.

There was also the following agreement of facts copied in the record:

"JAMES KEATLEY *vs.* WILLIAM ADAIR JR. *et al.:*

"It is agreed that the land was sold on an election day at the place of holding the election; that the land brought one thousand two hundred and ninety dollars; that William Adair jr., the beneficiary in the trust-deed, was the purchaser; that the grantor in the deed, Nancy Burke, was at the time of sale, ninety-four years old; and that the plaintiff, Keatley, has put in an upset bid of two thousand five hundred dollars, guaranteed by proper bond with sufficient security, March 23, 1881."

From this decree and the vacation-order of June 14, 1879, Nancy Burke and James Keatley have obtained an appeal and *supersedeas.*

*Davis* for appellant.

*A. C. Houston* for appellees.

GREEN, JUDGE:

The vacation-order of June 14, 1879, dissolving the injunction, which had been awarded, was clearly right. The answer of the defendant not only on oath denied every allegation made in the bill, upon which the injunction had been awarded, but supported many of these denials by exhibits filed with the answer. No deposition or affidavit or other evidence was filed to support the bill, though more than ten days' notice had been given to the plaintiff, that a motion would be made to dissolve the injunction. Under these circumstances there would have been an obvious impropriety in the circuit judge declining to act on the appointed day and continuing this motion to a future day. No harm could be done to the plaintiff by the immediate action of the court on this motion. For though the court dissolved the injunction, which forbade the trustee to sell this tract of land under this deed of trust, yet the trustee could not under the provisions of the deed of trust have sold this land for at least thirty days after this injunction was dissolved. And in point of fact he did not sell it for fifty-seven days; and during all that time the plaintiff had the opportunity to take depositions to support her bill, and if supported she could on motion have had this injunction reinstated.

It is equally clear, that the decree of March 20, 1882, is correct, so far as it dismissed the bill and amended bill of Nancy Burke in the cause of *Nancy Burke* v. *Wm. Adair jr. et al.*; for the evidence in this cause fails to support the allegations in her bill and amended bill, on which she based her claim to set aside and annul the sale of said land in the deed of trust mentioned to the defendant Wm. Adair, jr., and to enjoin him from collecting her bond to him of one thousand and forty-three dollars and fifty-four cents, or to declare it null and void. The evidence shows, that she was, when this bond was given, indebted to him in that amount, and that she executed said bond and the deed of trust on her farm to secure such debt, and that when she did this, she was aware of what she was doing, and that no fraud or imposition was practiced on her to procure the execution of the same by Wm. Adair jr. or by the notary public, or by J. A. Harvey, who as her agent for her and in her presence

signed her name to said bond and deed of trust. The fact, that the notary public was a brother-in-law of Wm. Adair jr. and J. A. Harvey his uncle, and that she was a very aged woman, ninety-six years of age, and that no one else was present except two negroes formerly her slaves, and they only occasionally in the room, while these transactions were going on, required of the defendant strong evidence of the fairness of this transaction ; but this evidence was produced by him. And it was satisfactorily proven, that a statement of her indebtedness to him was made out in writing and read to her, that there was no controversy then about the amount of her indebtedness, that she well knew the contracts of the deed of trust and bond signed by her, and that J. A. Harvey was really selected by her not only as her agent in this matter but in endeavoring to make a sale of her land privately ; and especially was the fairness of the entire transaction shown by the actual production of the statement showing the items, of which her indebtedness to him amounting to one thousand and forty-three dollars and fifty-seven cents was composed ; and further failure to prove, that any of the items of this statement were erroneous.

So far from the evidence showing that there was any un-fair advantage taken of her or any oppression of her practiced by Wm. Adair jr. it shows that throughout the entire transaction he has acted liberally and generously to her. Most of her indebtedness to him was the result of large advances made by him to pay off executions against her. For such advances he charged her only *six per cent.* interest in this settlement, though she had agreed to give him ten per cent. interest thereon. He waited two years for a part of these advances before he even took this deed of trust. He then extended to her some eighteen months' credit on all his advances without any charge of interest during that time. He then waited, in order to give her an opportunity of sell-ing her farm privately, some two years and a half after the expiration of this liberal credit ; and during all this time she paid nothing on her indebtedness to him. Under such cir-cumstances it can not be regarded as harsh, that he should direct the sale under his deed of trust ; though she was an old and helpless woman.

In her amended bill she does not complain, that the land was sold without proper advertisement, or that the price paid for it by Wm. Adair jr., one thousand two hundred and ninety dollars, was not a fair and adequate price. The court court could not have done otherwise than dismiss her bill and amended bill.

The bill of James Keatley her nephew, to whom before the sale she had made a deed of this land, does charge, that the land was not advertised, that no notice of it was served on the grantor in the deed of trust, nor any advertisement of it posted anywhere, and that the land was sold at a grossly inadequate price, because it was not advertised, that no one was present at the sale but the trustee and Wm. Adair jr., and that he bought the land at one thousand two hundred and ninety dollars, when it was worth three thousand dollars, and asks that this sale be set aside. The answer of Wm. Adair jr. denies all these allegations; and the evidence shows, that these allegations were all untrue and many of them were utterly reckless statements having no foundation in fact. The plaintiff himself was, as in his deposition he admits, present at the sale and made no objection to its being made. The grantor in the deed of trust had a written notice of the sale served on her more than a month before the sale; and the plaintiff admits that this notice was sent to him by her, and that he attended the sale, and that there were a good many persons there. It is true that an effort was made to show, that the land sold at a grossly inadequate price; but this effort was a total failure.

There is much evidence to show, that the tract of land brought its fair cash value. And if our opinion of the value of the land was formed only from the estimate of its value by the witnesses, I could not say it did not bring a fair price. But the bond of the plaintiff Keatley with security dated October 5, 1881, named in the final decree evinces, that upon a re-sale said Keatley would have bid perhaps two or three hundred dollars more for this land than it had sold at; and it may be that it was worth that much more. But of course such a trifling advance is no evidence, that the property was sold at such a gross inadequacy of price, as to indicate unfairness in the sale and to justify us on that account in setting

it aside, the more especially as the person making this offer was present at the sale and did not bid.

There is a memorandum of an agreement by counsel copied into the record, whereby it was agreed the plaintiff Keatley had put in an upset bid guaranteed by proper bond and security for this tract of land, if re-sold, of two thousand five hundred dollars. But this I regard as no part of the record, it not being referred to in the decrees or any depositions or papers filed in the causes. But if it could be regarded as a part of the record, it would make no difference. It does not even tend to show, that this tract of land was worth any more than the previous offer referred to in the final decree. For as this land belonged to the plaintiff James Keatley, all that it brought beyond his first offer would necessarily be paid back to him; and he could as well have offered to bid five thousand dollars for this land as two thousand five hundred dollars.

The allegation in the bill of James Keatley, "that the sale by the trustee Hale was made without any notice or knowledge of the plaintiff; that said land was not advertised; that said notice was not served on the plaintiff nor on the defendant Nancy Burke nor was it posted as required by law or in any other manner," were positively denied in the answer of Wm. Adair jr.; and there is no evidence tending to support any of them. On the contrary it is proven that a copy of the notice of sale was served on Nancy Burke thirty-seven days before the day of sale, and that it was read and explained to her, and the plaintiff Keatley in his deposition admits that this notice was sent to him by Nancy Burke and he attended the sale. At the same time the trustee mailed copies of the advertisement to persons at Union, Linsdale and Peterstown in Monroe county, West Virginia, and these persons all as requested promptly posted these advertisements; and the trustee himself posted one of these advertisements at the Red Sulphur Springs in said county; and on the same day it was posted on the front door of the court-house of Monroe county.

The statute requirements with reference to this advertisement of a sale under a deed of trust are found in chapter 72 section 7 of Code of West Virginia page 464, and are: "The

notice of sale shall in every case be posted at least thirty days prior to the sale on the front door of the court-house of the county in which the property to be sold is, and at three other public places, at least, in the county, one of which shall be as near the premises to be sold (in case the sale be of real estate) as practicable; and a copy of such notice shall be served on the grantor in the deed, or his agent or personal representative, if he or they be within the county, at least twenty days prior to the sale." The evidence is full that all these requirements of the statute were complied with, provided Centreville, Union, and Peterstown are public places, and that the Red Sulphur Springs was as near this tract of land as practicable; and the advertisement contained all that is required to be in such advertisement. There was no copy of the advertisement filed in the cause or with the depositions. The only description, which after more than two years, is given of the advertisement, was that "it was the notice of the sale of land under a deed of trust executed by Nancy Burke to L. C. Hale, trustee, for the benefit of William Adair jr., which deed of trust bore date March 30, 1875." No witness testifies, that the several places, where this advertisement was posted, were public places, such as the law requires advertisements of sale to be posted at. But on the other hand it must be observed, that there is not one particle of evidence in any degree tending to show, that the advertisement was in any respect defective or that the places, at which it was posted, were not the places, at which the statute-law required it to be posted. But on the contrary there is much in the cause, which tends to show, that this statute-law was in all respects complied with.

In the first place, James Keatley the then owner of the land was present at the sale. He had received probably a month before a copy of this advertisement, yet he made no objection to the sale, because the advertisement was in any respect defective, nor was any complaint of this kind made so far as the record shows for more than two years and seven months, when he filed his bill in this cause making this allegation. Only three days after the sale the trustee, L. C. Hale, made a deed for this land to the purchaser, William Adair jr., in which he recites: "Whereas said trustee by

virtue of the authority vested in him by the deed of trust herewith mentioned, did sell as required by law a certain tract of land situated in the county of Monroe and State of West Virginia conveyed by Nancy Burke to L. C. Hale, trustee, by deed bearing date the 30th day of March, 1875, and recorded in deed book W. page 203 in the office of the clerk of Monroe county court." This deed was duly recorded on October 20, 1879, and was distinct notice, that the trustee claimed to have advertised this land properly. The owner of the land, who had lost it by this sale, the plaintiff, James Keatley, knew whether this land had been properly advertised having, as he admits, seen the advertisement. Yet he does not complain of its being insufficient for nearly two and a half years. And then in his bill makes the reckless statement, that it was "not advertised;" implying that it was sold without any advertisement, which was clearly disproved.

The appellant's counsel insists that the burden of proving that sections 6 and 7 of chapter 72 of the Code have been fully complied with rests upon the purchaser at a sale by a trustee under a deed of trust, and that he is not relieved of this burden by showing that a deed has been made to him by the trustee and duly recorded or by the lapse of time since the sale and the making of the deed. To sustain this position *Gibson's Heirs* v. *Jones et al.*, 5 Leigh 370 is referred to. That case differed from this in several important particulars. The land in that case was not sold till after the death of the grantor in the deed of trust; and the purchaser sold to a third party. The bill assailing the deed to the purchaser from the trustee alleged, that the sale was a private sale. The answer of the purchaser claimed, that the sale was a public sale, and that the administrator of the grantor was a bidder at it. The evidence proved, that there were but few persons at the sale, and that the land sold low. The cause was never set for hearing as to the trustee; and he never answered. No proof of any sort was offered, that the land was advertised; and the answer of the purchaser only said: "He supposed the sale was duly advertised." The decree of the court below dismissing the bill was properly reversed, as the trustee, who was a necessary party in such suit, was not before the court, when the decree was rendered.

But in rendering the opinion of the court Judge Tucker says: "Indeed an opinion has been entertained by able men that a trustee ought not to proceed to sell, when the debtor dies; since by his death the duty of redeeming and the benefit of redemption, which were before blended in the same person, are now separated; the duty devolving on the executor, to whom it belongs to discharge the debts, and the benefit accruing to the heir, who has a right to demand of the executor if he assents to relieve the trust subject from the encumbrance. Moreover the heir not being cognizant of the debts, is unprepared to defend the estate from an unjust sacrifice. On these grounds Judge Coulter allowed an appeal when I was at the bar, though I am unable to say what became of it." See p. 374.

On page 373 the Judge further says: "The bill charges that the sale of the trustee was made without advertisement, and calls upon the trustee to answer to that declaration. They have not answered nor has the fact of advertisement been proved. The *onus* as to the proof was on the defendants, since the plaintiffs cannot prove a negative. We cannot then take the advertisement as proved; but on the other hand we cannot take its existence as negatived, because those who were cognizant of that matter, are not before the court." And again on page 375 he says: "The bill charges the sale to have been irregularly made, and without advertisement, by which a great sacrifice was produced. The answer does not allege that there was an advertisement. The defendant took it for granted the proceedings were regular. It became him to prove they were so. The proof lay upon him, for he had the affirmative of the issue as to this point. The plaintiffs could not prove there was no advertisement. They made an effort to do so by making the trustees parties; but their bill was dismissed without the trustees having ever been brought before the court."

In that case the suit was brought to set aside the sale in less than a month after the sale was made by the trustees. The court of appeals of Virginia did not set aside the sale but only remanded the cause to the circuit court, in order that proper enquiries might be made before a final decree

was entered. There is no doubt but that this decree was proper, the cause really not being ready for hearing.

But in what we have quoted from Judge Tucker's opinion are expressions, which this Court has condemned. Thus in *Spencer & Miller* v. *Lee*, 19 W. Va. 179, this Court (syllabus 3) held: "A court of equity will in no case set aside a sale made by a trustee, simply because it was made after the death of the grantor." In this concurred President Johnson and Judges Haymond and Green. Judge Patton did not concur in this, and in his opinion approves of the remarks of Judge Tucker just above quoted. Judge Green in his opinion disapproves of them and with his views on this point all the judges except Judge Patton concurred. In *Dryden Adm'r* v. *Stephens et al.*, 19 W. Va. 15, President Johnson speaking of the remarks of Judge Tucker last above quoted says· "This decision we approve; but we cannot assent to the broad doctrine stated by Judge Tucker in his *dictum* that in every case and at any time all a party, who is interested to have a deed from a trustee cancelled, must do is to file his bill and charge that the sale was not authorized according to the provisions of the trust-deed; and when the defendant's trustee answers, denying the charge in the bill, and there is no other proof in the case on the point the deed must be cancelled. If this be true many land-titles hang by a very slender thread indeed." Judge Johnson shows the approval of this *dictum* of Judge Tucker by the special court of appeals of Virginia, composed of circuit judges, in the case of *Norman* v. *Hill*, 2 Patt. & H. 676; and he then reviews the cases of *King* v. *Inhabitants of Whiston*, 4 Ad. & E. 607; *Thayer* v. *Barney*, 12 Minn. 502; *Smith* v. *Jordan*, 13 Minn. 271;, *O'Hara* v. *Blood*, 27 La. Ann. 57; *Banks et al.* v. *Bales*, 16 Ind. 423; *Drake* v. *Mooney*, 31 Vt. 617; and *Wood* v. *Terry*, 4 Lans. 80. From these cases he infers that upon the general principle acted on in them, though it was applied to a different subject, it ought to be held, "that the execution of the deed to the purchaser by the trustee is *prima facie* evidence, that all the steps necessary for the trustee to take, in order to give him a right to make the deed, had been taken, and that this presumption would be conclusive, unless rebutted by other facts and circumstances in the case. Why should a *cestui que trust* permit

his agent to make the sale and without showing *mala fides* on the part of the agent be permitted to set aside the sale, unless the agent first showed he had not sold contrary to law?" In that case in syllabus five the *quære* is put: "After a sale and conveyance by the purchaser at a trust-sale to a third party who had no notice of a defective advertisement, could the validity of the sale and of the deed to the purchaser under the trust-deed be questioned?"

Upon the authorities cited by Judge Johnson in *Dryden Adm'r* v. *Stephens et al.*, 19 W. Va. 15, 16, I conclude, that after a sale is made by a trustee, who has not only the authority to sell but the legal title also, and the trustee has entirely completed his duties by making a deed for the land sold to the purchaser, then in the absence of all proof to the contrary it will be presumed, that he has done his duty by properly advertising the land before the sale. In addition to the above authorities referred to by Judge Johnson I refer also to *Hougham* v. *Sandys*, 2 Simons 95 (Con. Eng. Chy. 348). The vice chancellor says:

"The first objection made to the validity of this appointment of the 14th of April, 1761, is that it appears that, before it was executed, there was some other apointment made by a deed-poll on the 20th of June, 1760; and it is said because it does not appear what has become of that deed-poll, and because it is impossible, if it does not appear, to be quite sure that the deed-poll itself has been revoked by the appointment of the 14th of April, 1861, and because it might happen that, if it was not revoked, the limitations contained in it would be utterly inconsistent with the limitations contained in the instrument of the 14th of April, 1761, therefore the instrument of the 14th of April, 1761, cannot be considered a valid appointment. It appears to me there is no foundation for that objection. Hence we have an instrument under hand and seal, solemnly made, expressly recognizing the instrument of June preceding, and formed for the express purpose of revoking that instrument, and making new limitations apparently inconsistent with it. * * * I am asked when I find something so clear and explicit as to the intention of the party, declared by the existing and forthcoming instrument of the 14th of April, 1761, to pay no

regard to it whatever, and to consider it altogether inoperative, because a conjecture is made that the power of revocation reserved in the deed of June preceding, was not duly executed by this instrument of the 14th of April, 1761, deliberately made for the purpose of revoking it. My opinion· is that I am bound to act and must feel my judgment concluded by that which is plain and explicit and I cannot allow this instrument, which apparently is a perfect and valid instrument, to be set aside and overruled by a conjecture as to the contents of that deed which cannot be produced."

So where a trustee by a solemn deed duly executed and recorded conveys to a purchaser a tract of land for the express purpose of carrying into execution a trust imposed on him by a deed of trust recognized in the deed, and stating on the face of the deed that the land had been sold in the manner required by law, we cannot hold such deed inoperative, merely because it is conjectured, that the advertisement which is not produced, might have been informal or not posted at the places required by law. The case before us is stronger; for the trustee having not a naked power of appointment but being invested with the legal title, his deed to the purchaser conveys that legal title; and if he is to be deprived of his legal advantage, it must be by affirmative proof at least that he obtained that legal advantage by irregularity if not by fraud. The presumption arising from the deed being made to the purchaser, that the land had been properly advertised, would be weak, if the suit assailing the advertisement was brought promptly; but it would strengthen with time, and if the suit was, as in this case, brought two or three years after the deed was made to the purchaser, the principle *omnia presumuntur rite esse acta* would apply with increased force; and much stronger evidence would be required to rebut the presumption that the land was properly advertised.

In the case before us there is not only no evidence to rebut this presumption, but a large amount of evidence to strengthen it. The Red Sulphur Springs, where one of the advertisements is proven to have been posted for the required time, is proven to have been within a mile of the tract of land sold, and that it was an election-precinct. We may therefore well

infer, that it was a public place and as near the land to be sold as practicable. It was also proven, that the notice of sale or advertisement was posted at least thirty days prior to the call on the front door of the court-house of the county, in which the land lies, and at three other places in that county, all of which bore names and were therefore presumably public places. And it was also proved, that a copy of this notice was served upon the grantor of the deed of trust more than thirty days before the sale. And in opposition to all this evidence the plaintiffs introduced not one particle of evidence, which tended in the least degree to give rise to a suspicion even, that the land was not legally advertised. I conclude therefore that the decree of March 20, 1882, dismissing the several bills in these causes was fully justified by the evidence as well as that portion of said decree which ordered that "Wm. Adair jr. do recover of the plaintiffs respectively his costs by him in these causes expended."

But it remains to enquire, whether this decree ought not to have ended there, and whether the last clause of this decree was proper to be entered. That clause is: "And a writ of possession is awarded the defendant Adair, to put him in possession of the land." The counsel for the appellees insist, that this part of this decree is to be regarded as a decree on the affirmative matter set up by the defendant, Wm. Adair jr., at the close of his answer to the amended bill accompanied by a prayer for affirmative relief, and which portion of said answer should be regarded as a cross-bill; and as no replication in writing was filed thereto the allegations of this cross-bill ought to be regarded as confessed. This portion of this answer thus claimed to be a cross-bill asks, that a certain agreement made between the defendant, Wm. Adair jr., and Nancy Burke may be cancelled, and that he may be awarded a writ of possession for said land. What is meant by this it is difficult to determine. It apparently asks for a writ of possession for the entire tract of land, though it is possible it only meant to ask for a writ of possession for the house and few acres of land connected therewith named in this agreement asked to be cancelled.

This agreement was not filed with the answer or its contents even described particularly. It is simply referred

to as an agreement filed with the depositions in the cause. And if we look at it, we find that it recited, that Nancy Burke surrenders to Wm. Adair jr. possession of the entire farm purchased recently by him of the trustee, and he agrees to allow her to occupy the house in which she then lived, and five acres of land on the eastern end of the farm, her occupation of it to continue during her life. This agreement concludes: "It is understood that this grant to Nancy Burke is a donation from said Wm. Adair jr." This transaction is thus stated in the following portion of said answer of Wm. Adair jr., claimed to be a cross-bill: "That after the sale to him he brought this suit against her for unlawful detainer and by the judgment of a justice obtained possession of the said land, when of his own motion he entered into this agreement with her, whereby he allowed her to remain in possession of the house upon the said land and a few acres in connection therewith; but she contrary to the provisions and spirit of the said agreement has continued to prosecute this suit." And he prays therefore a rescission of this agreement and writ of possession for said land.

Suppose the facts stated in this answer are regarded as true, would it follow, that the defendant Adair had a right to have this deed annulled? It seems to me far from clear. It is true that this answer does allege, that "contrary to the provisions and spirit of this agreement she has continued to prosecute this suit." The inference to be drawn from this statement would be, that the consideration given by her for this grant was an agreement on her part to abandon this suit; but the agreement itself on its face shows, "it was understood that this grant to Nancy Burke was a donation from Wm. Adair jr.," which apparently contradicts the statements of this answer; and yet this agreement constitutes a part of the answer. If from the agreement itself I was to infer the character of the transaction, I should say, that if the grant to Nancy Burke of these five acres of land for life was not entirely gratuitous, the only consideration for it was the surrender to Wm. Adair jr. of the entire balance of the farm. It is true a justice had rendered a judgment in favor of Wm. Adair jr. for the entire farm on a writ of unlawful entry and

detainer. But this might have been appealed from to the circuit court, and if there was really any abandonment of litigation on her part contained within the spirit of this agreement, it would seem rather to have been this litigation in the unlawful entry and detainer case than in this case now before us. For while that was mentioned in this agreement, there was no allusion of any sort to this suit. If therefore this was regarded as a good cross-bill, inasmuch as there is not a particle of proof to sustain its allegations, and the agreement referred to in it as constituting a part of it is in apparent conflict with its statements, it is doubtful whether any relief could have been granted, because the allegations contained in it were contradictory.

It is also doubtful, whether the matters thus sought to be introduced into a cross-bill could properly be introduced in that manner. For a cross-bill should be confined to the matters stated in the original bill and should not introduce new and distinct matters not embraced therein. 2 Barb. Chy. 130, 14 W. Va. 678 and *Hansford et al* v. *Ches. Coal Co. et al.*, 22 W. Va. 70. As I understand the final decree of the circuit court, the court took this view of the subject; for though it has not so expressed itself, yet it takes no notice whatever of what is deemed as a cross-bill This cross-bill has never been heard or considered by the circuit court. There is no reference made to it in any manner in this final decree of the circuit court. The appellee's counsel suppose, that the last sentence of that decree was intended to have been action based on this cross-bill. This sentence is " and a writ of possession is awarded the defendant Adair to put him in possession of the land." The land, which Adair was by this provision of the deed to be put in possession of, was the tract of land he had purchased of the trustee named in the bills and proceedings. There is no reason for confining it to the five acres named in this cross-bill. If the court had intended acting at all on this cross-bill, as a matter of course it would first have rescinded or refused to rescind the agreement referred to in this so-called cross-bill. If it had rescinded this agreement, then it might possibly have awarded a writ of possession, though whether rightfully or not I will not say. But as the circuit court has

never acted upon the case attempted to be made by this cross-bill, as it is called, this Court, which is only a court of appellate jurisdiction, will express no opinion with reference to the matter contained in the so-called cross-bill. See *Armstrong et al.* v. *Town of Grafton, supra.* Nor will we remand this cause to the circuit court to be further proceeded with, as it has finally determined these causes on their merits, and in a manner we deem just, except that no writ of possession should have been awarded Wm. Adair jr. This litigation being thus ended should not be prolonged by introducing into it at this late stage the matters which may be in controversy arising out of the new matters contained in this so-called cross-bill. It is doubtful whether they ever could have been properly introduced into these causes by cross-bill, and certainly they can be more legitimately litigated in a new suit or suits. We shall therefore provide in our decree that it shall be without prejudice to the rights of Wm. Adair jr. or of Nancy Burke to enforce or have canceled the agreement of November 14, 1879, or to any right, which Wm. Adair jr. may have to recover by proceedings at law the tract of land conveyed to him by L. C. Hale trustee or any part thereof. The provision of the decree of March 25, 1882, whereby a writ of possession was awarded the defendant Adair not being action upon the so-called cross-bill was obviously erroneous and must be reversed. The residue of the decree of March 25, 1882, must be affirmed as also the vacation-order made June 11, 1879; and the appellants must recover of the appellee Wm. Adair jr. their costs in this Court expended; and this Court should enter up such decree as has been indicated.

AFFIRMED IN PART—REVERSED IN PART.