# CHARLESTON.

REED *v.* BACHMAN *et als.*

Submitted September 14, 1910.   Decided May 13, 1913.

MORTGAGES—*Trustee Sale—Action to Set Aside—Sufficiency of Evidence.*

> Reed, Bachman, Reno, Swope and Reeves, being joint purchasers and grantees—except Swope, who, though not named as grantee, had an equitable but, not legal title to one-fifth interest therein—conveyed the lands in trust to Hall to secure part of the purchase money therefor. Reed and Bachman, having by grant from Reeves acquired his interest in the lands, also conveyed the same in trust to Hall to secure the purchase money therefor. Bachman thereafter by grant from Swope acquired his equitable interest. Reno died owning his fifth interest. Under the authority of both trust deeds and "as required by law," Hall sold the three-fifths interest of Reed and Bachman to Doutt, who had no interest therein except as beneficiary under the first trust. Hall sold to Cain and Doutt the fifth conveyed to Reed and Bachman by Reeves, and conveyed to the purchasers the interests so sold by him under the trusts. Cain and Doutt thereafter conveyed to Bachman the interests so conveyed to them. Reed knew of the sales and deeds thereunder to Bachman nineteen years prior to suit assailing the same as fraudulent. HELD:

> I. That the fraud charged is not sustained by proof.

> II. That, in absence of fraud, Bachman acquired good title.

Appeal from Circuit Court, Pleasants County.

Action by Joseph S. Reed against M. Bachman and others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*II. P. Camden, G. D. Smith,* and *E. A. Brannon,* for appellant.

*Van Winkle & Ambler* and *L. N. Tavener,* for appellees.

LYNCH, JUDGE:

Denied relief on final hearing upon bill seeking partition of lands in Pleasants county, answers denying right thereto, exhibits and proof, plaintiff seeks review and reversal here. The

defendants are the widow and heirs at law of Martin Bachman, who died in 1884, claimants of portions of the lands under grants by him while living, grantees of other portions under judicial proceedings subsequent to his death, lessees for oil and gas purposes, and others. The lands, in which plaintiff claims a seven-tenths interest, were conveyed August 9, 1870, by Patterson, Braford and Doutt to Reno, Reeves, Reed and Bachman. The acreage, though not material, is not readily ascertainable from the record before us; but it is variously stated from 1000 to 1500 acres, the deed stating the latter quantity.

Though not named in the deed as grantee, the bill alleges, and the defendants, who, by their answers, refer thereto, admit, the proof shows, and various subsequent deeds state, that David Swope was a joint purchaser of the lands, each taking an undivided one-fifth interest therein. He, therefore, has or had at least an equitable interest, enforceable against his co-purchasers. The failure to name him in the deed evidently resulted from inadvertence or error on the part of the draftsman. On July 2, 1874, Reeves conveyed his interest to Reed and Bachman.

The interests asserted by plaintiff include the Reno and Swope two-fifths, and one-half of the Reeves fifth, together with his own, constituting seven-tenths of the whole tract. His claim to the Reno and Swope interests rests upon the averments of the bill, denied by answers, that at the time of the purchase from Patterson and others he paid therefor, upon an agreement with Reno and Swope that unless reimbursed he should have their interests; and that they failed to reimburse him. No one representing either Reno or Swope is a party to this suit except Reno's widow, who, the bill alleges, is his sole heir at law; but of this there is no proof. She is a non-resident of the state, without notice to answer except by order of publication, and does not appear herein for any purpose. The evidence, of which more will be said later, in support of Reed's claim to these interests, is of a general and inconclusive character—that Reed through Reeves paid $3500 of the $5500 consideration for the lands in 1870, and reimbursed Reeves therefor. In any event, Reed can not now, except upon full and satisfactory proof, not produced, maintain his claim to the Swope interest: because, in 1876, Swope conveyed to Bachman all his right, title and interest in the lands mentioned. Therefore, it may be said that,

thus far, Reed's interest is his original one-fifth and half of the Reeves fifth; and that Bachman's interest is his original one-fifth, half of the Reeves fifth, and the Swope equitable interest.

But the title is still further involved. On the same day that Patterson and others conveyed the lands to Reed and others. they in turn, Swope joining, conveyed the same lands to W. W. Hall, trustee, to secure the payment of the residue of the unpaid purchase money, namely, $2000, divided into notes payable in different amounts to each of the grantors in the deed. Likewise, Reed and Bachman, on the day Reeves conveyed his interest to them, conveyed the same interest to Hall to secure the purchase money therefor to Reeves. Acting under these two trusts, Hall sold to Cain and Doutt the Reeves fifth for $550, and to Doutt an undivided three-fifths interest in the original tract for $730. The date of these sales, although evidently on or prior to March 23 and April 30, 1877, is not more definitely shown. On the first date, and subsequent to the sale, Hall conveyed to Cain and Doutt the Reeves interest, and to Doutt on the second date the three-fifths interest in the lands, "with all the right, title and interest of Reed, Reno, Swope, Reeves and Bachman therein, to have and to hold the said real estate unto the said A. R. Doutt, his heirs and assigns forever." Each of these deeds recites that Hall sold under the authority of each trust and "as required by law." By way of explanation for failure to sell the tract in its entirety under the trust of August 9, 1870, and for selling thereunder the three-fifths only, the Hall deed to Doutt for the three-fifths recites that prior thereto Doutt had released to Bachman the other two-fifths, because theretofore Patterson and Braford had been fully paid their share of the purchase money. The record shows such release by Doutt to Bachman, executed in due form and recorded. Cain and Doutt, on April 13, 1877, conveyed to Bachman, for $1000, the interest conveyed to them by Hall's deed of March 23; and, for a like sum, Doutt, on April 30, 1877, conveyed to Bachman the three-fifths interest conveyed on the same day to him by Hall. Each of these deeds acknowledges payment of the consideration therein recited. Thus, it will be observed that Bachman paid for these interests a sum in excess of that paid by his grantors to Hall, trustee.

Reed challenges the validity of the Hall sales under the trusts for irregularity or want of notice, and the purchases by

Bachman from Cain and Doutt as fraudulent. The defect in the notice relied on is not indicated except by argument, to the effect that, as Doutt released the two-fifths interest only twelve days before Hall's deed to Doutt for the three-fifths, the notice was not, and for lack of time could not have been, published and posted as required by law. But Hall's deeds, in effect, say notice was so published and posted. For aught appearing to the contrary, Hall may have advertised the tract in its entirety, and not an interest only. The other defect is that notice was not personally served on Reed. The statute did not then require such notice or personal service on the grantor in a trust deed, nor does it now, except where he "or his agent or personal representative be within the county, at least twenty days prior to the sale." Code 1906, ch. 72, § 7, first so amended in this state by ch. 140, Acts 1882. There is no averment or proof of this essential condition demanding service, even if then required. Reed does not specify any other defect. Even if specified, he assumed the burden of proving it. *Lallance* v. *Fisher,* 29 W. Va. 512. If none are specified and proven, "it will be presumed that the land was properly advertised," and that "the trustee conformed to the law." *Burke* v. *Adair,* 23 W. Va. 139; *Fowler* v. *Lewis,* 36 W. Va. 112, 132.

The charges in the bill indicative of fraud are, first, that Reed had paid his share of the original purchase money, and of the purchase money for the Reeves interest, and that, therefore, he was not in default; and that it was Bachman's fault, if any, which made the sales by Hall necessary. The other ground of fraud is the charge of conspiracy between Cain and Doutt and Bachman whereby, as alleged, the first two were to buy the lands and subsequently convey them to Bachman. This latter averment is denied by answers, and is not supported by any proof whatever. Reed seeks to sustain the first charge by Reeves as a witness. But his testimony on this subject is uncertain, inconclusive, and unreliable. It is scarcely conceivable that any man sixty-one years of age could remember so distinctly, and aver with such minute detail, what he states in his testimony, concerning transactions occurring nearly a third of a century before his examination. In fact, he admits that his recollection of these events was stimulated by reading the record of a former appeal, brought to him, as he also admits, by

the plaintiff and his daughter for examination before testifying, for which he repeatedly calls while on the witness stand, and without which it may be doubtful whether he would be able to recollect what he so volubly and confidently asserts. He speaks flippantly of himself as the "monied man" in the transaction, and later, as if by apology, he says, "Reed and I were the monied men," when the evidence shows that both of them borrowed whatever was paid by them, if any was paid, from Reeves' mother, who, as Reeves now says, took a deed of trust from Jacob Reed, a brother of Joseph Reed, as security therefor, and that he, Reeves, took the same with him to Pleasants county and caused it to be admitted to record. This deed was not produced. Had it been produced or its absence explained, it would at least have tended in some degree to corroborate Reeves and lend some credit to his testimony. It may, therefore, with propriety, be presumed that no such trust then existed, or ever did exist.

Again, Reeves confidently contradicts the statements of the plaintiff's bill and the recitals in the deed of trust by Reed and Bachman to Hall, trustee, in each of which it is explicitly stated that Reed and Bachman united in the making and execution of the two notes thereby secured. He says each executed separate notes, not joint notes. Both notes are dated July 2, 1874, one for $877 due at one year, the other for $942 at two years. The second note Reeves says he assigned to Cain after its maturity. It became due in 1876. He returned to Pittsburgh in 1871, never thereafter seeing the lands, as he admits. Yet he says Cain, with whom he was evidently intimate, asked him in 1876 how he was "making out up there", clearly meaning on the lands, five years after he had permanently abandoned them, in fact two years after he had in Pittsburgh sold his interest to Reed and Bachman.

Admitting the averments of the bill as sufficiently charging fraud, of which some doubt may be properly expressed, there is no proof thereof, except the discredited statements of the witness Reeves—and he speaks only of payments by Reed—unless fraud is presumed from the acts of Cain, Hall, Doutt and Bachman, all of whom except Cain, and he is incapacitated by age, died long before the institution of this suit. This condition, therefore, leads us directly to the inquiry whether the sales and deeds thereunder by Hall to Cain and Doutt and by them to

Bachman were in fact fraudulent as to Reed, and, if not fraudulent, whether Bachman's purchases operated as deferred payment, ·for the joint benefit of Bachman and Reed, of the debts secured by the Hall trusts. In other words, did Bachman's purchases from Cain and Doutt enure to the common benefit of Reed and Bachman? Reed relies for relief on both grounds.

First, it is noted that, in the bill, plaintiff alleges that Bachman informed him in Pittsburgh in 1884 of these sales and purchases. As to Reed, of course, this allegation must be taken as true, whether denied or not by answers. But it is not denied. He, then, knew, nineteen years before the institution of this suit, that Hall had sold, that Doutt and Cain had purchased and conveyed to Bachman, and that Bachman was then, in effect, holding or claiming to hold the lands thereunder. It is ·true, he also says in the bill that Bachman told him, at the same time, that he had purchased for their joint benefit. But this averment is denied by answers, and not supported by proof. In fact, there is no proof that Reed saw Bachman in Pittsburgh in 1884, or at any time or· place after 1870. His statement, in that respect, rests wholly upon the allegations of his bill, which, as stated, must be taken as true except in so far as denied by answers.

Thus, it is apparent that the question presented for decision is not the purchase by one cotenant of an outstanding title or encumbrance prior in time or right to that of the cotenants, nor of a purchase by one cotenant of the interest of another cotenant in the common property. But, admitting the existence of a cotenancy between Reed and Bachman, the question is whether a trust relation arises from the purchases by Bachman from Cain and Doutt, who bought the interest of both Reed and Bachman at a sale under a deed of trust thereon authorized by both, neither deceit nor fraud appearing. That Cain and Doutt could ·so purchase and obtain and hold title thereunder against Reed and Bachman is unquestionable. Under these circumstances, ·they were as free to purchase thereat as any other person or persons. Cain had no prior interest in the lands; and, so far as appears, never had. Doutt was, of course, one of the former owners, a grantor in the deed of 1870, and beneficiary under the deed of trust securing the unpaid balance of the purchase money therefor, and hence interested in the sale to that extent

only. But that interest did not disqualify him as a purchaser; nor was it sufficient to impugn his motives as a bidder at a public sale of the property subject to the lien of the trust. They could, therefore, as they in fact did, covin, deceit or fraud not otherwise appearing, purchase and obtain deeds therefor from the trustee acting under ample authority and "as required by law." Having so purchased and obtained deeds therefor, they became the fee simple owners of the Reed and Bachman interests, and legally authorized to hold or dispose of the same at their pleasure. They could, with propriety, sell and convey to Bachman; and he, with equal propriety, could purchase and acquire title from them. No valid reason is or can be assigned why he could not, provided of course no fraud or deceit entered into his acquisition of the title thereto.

· Reed admits he was on the verge of insolvency as early as 1873, the year of the panic; that he made a general assignment for the benefit of his creditors in 1876, not therein mentioning his interest in these lands except under the terms, "all my estate, real, personal and mixed, wherever situate"; that in 1877, the year of the Hall sales and deeds, he filed several petitions in bankruptcy in Pennsylvania in 1878, and 1879 he obtained a discharge from all his liabilities, paying only eight per cent thereof, and in none of which was any effort made to charge or otherwise dispose of the interests now claimed by him in the Pleasants county lands. Notwithstanding Reed's financial condition and knowledge, acquired by him from Bachman as he says as early as 1884, of the Hall sales and deeds, he delayed the assertion of any right or claim of benefit from the sales or deeds until after the expiration of nineteen years from the date of his knowledge thereof. During these years, in fact from 1870 to 1903, he at no time, so far as disclosed, asserted or endeavored to assert any interest or claim to an interest in the lands or the rents, issues or profits thereof. Why he thus delayed, under these circumstances, he does not pretend to say, except for vague and doubtful reasons averred by the bill, which are unsustained by any competent or trustworthy proof. In fact, not a word falls from the lips of any witness by way of explanation for this unusual and extraordinary delay.

The rule seems universal that one seeking to hold another as trustee for his benefit must act with diligence. Otherwise,

equity will deny relief.  So, where fraud is charged.  This rule, and the validity of the Bachman title, find support in *Morris* v. *Roseberry,* 46 W. Va. 24.  There the plaintiff and defendant were cotenants with others as owners of the lands by descent. The cotenant in possession failing to pay the taxes, the lands were sold therefor, and purchased by one not formerly interested in the title, who thereafter, upon receipt of the amount and interest necessary under the statute, joined with the clerk of the county court in a tax sale deed to the cotenant so in default.  The sale and title thereunder so acquired were sustained as valid, although less than ten years elapsed between the date of purchase and suit.  Laches is held applicable as a good defense to defeat recovery in many instances within a less period than the statutory bar.  In *Patrick* v. *Stark,* 62 W. Va. 602, it is stated that "the equity rule of laches is applicable to proceedings to enforce all trusts affecting title to land, for the establishment of which resort must be had to parol evidence, without regard to classification as express, implied, resultant or constructive trusts."  Here, Reed relies on a trust or fiduciary relations forbidding purchase by Bachman.  But *Bargamin* v. *Clarke,* 20 Grat. 544, holds that when this relation is no longer admitted to exist, or time and long acquiescence have obscured the nature or character of the trust, or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief, upon the ground of lapse of time and its inability to do exact justice.  In this case there are such circumstances.  This is the rule of general application, where the cotenant buys an outstanding superior title. To participate in its benefits, the cotenant must, within a reasonable time after knowledge thereof, elect not only to claim the benefit thereof, but must also offer to contribute to the expenses incident to the purchase; and "if he unreasonably delays until there is a change in the condition of the property, or in the circumstances of the parties, he will be held to have abandoned all benefit arising from the new acquisition."  But Reed not only unreasonably delays after knowledge, but makes no offer to contribute to the expense of Bachman's purchases or taxes since paid by him.  In the meantime, the condition of the property and the circumstances of the parties have materially changed; the property by improvements, the parties by death

and infirmity. The active participants, those who knew all the facts, are dead. None now live who may defend Bachman's title, by a denial of the averments of the plaintiff's bill, in support of which he, although examined as a witness, knew nothing, and said nothing on which counsel rely to maintain his right to the relief now sought.

It is urged that the decision on the former appeal settles the principles of the case adversely to the Bachman claims. That appeal settled nothing except upon the facts alleged in the bill, the truth of which the demurrants admitted. But here the facts then so admitted are denied, and are unsupported by any proof or by testimony deemed sufficient as proof thereof. As an illustration, the former opinion dwelt at length and repeatedly on the Bachman admissions to Reed in the alleged conversation in Pittsburgh in 1884, when now there is not a word of proof in the record of any such conversation or admission, although the denial of the answers challenged Reed to produce proof in its support.

For reasons stated, and in view of the principles herein announced and sustained by the authorities cited, the conclusion is reached that there is no error in the decree of which the plaintiff complains. Therefore, an order may be entered here affirming the same.

*Affirmed.*